**COUNTY OF DAKOTA, Respondent,**

**Victoria Louise Reily, a/k/a Victoria Louise Darnell, Respondent,**

v.

**Edward Lee BLACKWELL, Appellant.**

**No. A11–336.**

Court of Appeals of Minnesota.

Aug. 22, 2011.

Jean M. Mitchell, Assistant Dakota County Attorney, West St. Paul, MN, for respondent County of Dakota.

Ann Bottolene, Lakeland Law Office, Burnsville, MN, for respondent Victoria Louise Reily.

Steven C. Youngquist, Youngquist Law Office, Rochester, MN, for appellant.

Considered and decided by BJORKMAN, Presiding Judge; HALBROOKS, Judge; and HUDSON, Judge.

## OPINION

HALBROOKS, Judge.

In this paternity action, appellant challenges the district court's grant of summary judgment to respondent Dakota County, arguing that the district court erred by adjudicating appellant as the father of the minor child without joining a third party presumed to be the child's father. We reverse and remand for proceedings consistent with this opinion.

## FACTS

The facts of this case are largely undisputed. Respondent Victoria Louise Reily (Reily) married John Melner Reily, Jr. (husband) on March 23, 1991. D.J.R. was born on March 22, 1999. D.J.R. is the biological child of appellant Edward Lee Blackwell and Reily. Reily and husband divorced in 2006, when D.J.R. was nearly seven years old. The petition for dissolution listed two children from the marriage and listed D.J.R. as Reily's child. In a pro se petition, husband requested joint physical and joint legal custody of all three children. The judgment and decree states that "[l]egal [and physical] custody of the parties' minor child(ren) of the marriage is granted jointly to both parties." There is no separate designation of custody of D.J.R.

The record does not indicate what, if any, interaction occurred between appel-

lant and D.J.R. during Reily and husband's marriage. But in July 2006, following her divorce, Reily, appellant, and D.J.R. moved in together. With respect to his relationship with D.J.R. during and after this time, appellant states:

> Although I have maintained health insurance and, for the most part, dental insurance for [D.J.R.] since 2006, I have never openly held him out as my son, even while [Reily] and I resided together. Since 2008, I have also paid [Reily] $400.00 per month. When we resided together, I provided for all financial needs for her and [D.J.R.], as well as her other two children she had with another man, during the approximate 3 months they lived with us over that time period.

Appellant also alleges in his affidavit that Reily, husband, and all three children moved back in together in 2007.

In September 2010, the county served appellant with a complaint, alleging that appellant is "liable for past support and medical and lying-in expenses not covered by insurance."[1] The complaint sought genetic testing to establish D.J.R.'s paternity, adjudication of appellant as the father of D.J.R., an order granting judgment against appellant for past support and reimbursement of public assistance, an order establishing ongoing child support, and the amendment of D.J.R.'s birth certificate, among other relief. Appellant submitted to genetic testing, which established a 99.99% likelihood that appellant is D.J.R.'s biological father, a fact that appellant acknowledges.

The county moved for summary judgment. Appellant opposed the motion and moved the district court to order "that [husband] be joined herein as a party De-

fendant." Appellant argued that "[husband]'s presence as a party Defendant to this matter is essential to establish which presumption should prevail with regard to the ultimate decision of the court establishing paternity with regard to the minor child." After a hearing, the district court granted the county's motion and adopted the county's proposed order in its entirety. The district court did not join husband as a party. This appeal follows.

## ISSUES

I. Did the district court err by denying appellant's motion to join husband?

II. Did the district court abuse its discretion by adopting the county's proposed findings verbatim?

## ANALYSIS

### I.

◼ Appellant argues that the district court erred by denying his motion to join husband as a party to the paternity action. Interpretation of the Minnesota Parentage Act, Minn.Stat. §§ 257.51–.74 (2010), is a question of law, which we review de novo. *In re Welfare of C.M.G.*, 516 N.W.2d 555, 558 (Minn.App.1994).

Minn.Stat. § 257.60 states that in an action brought to establish the existence of a father-child relationship under the parentage act, "each man presumed to be the father under section 257.55, and each man alleged to be the biological father, *shall* be made parties." (Emphasis added.) There is no dispute that husband is D.J.R.'s presumptive father under the statute: "A man is presumed to be the biological father of a child if ... he and the child's biological mother are or have been married to each

---

1. Apparently D.J.R. had been receiving medical assistance despite being covered by appellant's insurance.

other and the child is born during the marriage...." Minn.Stat. § 257.55, subd. 1.

Respondents argue that because appellant does not dispute that he is D.J.R.'s biological father, there is no need to join husband as a party to the paternity proceeding. We disagree. It is true that if a genetic test shows a 99 percent or greater likelihood of an alleged father's paternity, "there is an evidentiary presumption that the alleged father is the biological father." Minn.Stat. § 257.62, subd. 5(b). If there are conflicting presumptions, "the presumption which on the facts is founded on the weightier considerations of policy and logic controls." Minn.Stat. § 257.55, subd. 2. This statutory scheme permits a determination that a presumption of paternity based on a genetic relationship is founded on weightier considerations of policy and logic than a presumption based on marriage, but it does not mandate such a determination. To the contrary, the statute specifically provides that "[a] determination ... that the alleged father is the biological father does not preclude the adjudication of another man as the legal father under section 257.55, subdivision 2." Minn.Stat. § 257.62, subd. 5(c).

■ A legal adjudication of paternity is not controlled by biology. *See State v. Thomas*, 584 N.W.2d 421, 424 (Minn.App. 1998) (noting that genetic tests "are given no greater weight than the other presumptions listed in the Parentage Act" (quotation omitted)), *review denied* (Minn. Nov. 17, 1998); *see also C.M.G.*, 516 N.W.2d at 560 ("Where competing presumptions of paternity exist, the determination of paternity is no longer solely an issue of biological fact."). A presumptive father has a right to bring a paternity action at any time to declare the existence of a parent-child relationship. *See* Minn.Stat. § 257.57, subd. 1(a). The joinder of all presumptive fathers mandated by Minn. Stat. § 257.60 protects this, and other, rights. Husband raised D.J.R. for nearly seven years, husband sought joint custody of D.J.R. when he and Reily divorced, and the record reflects that husband and Reily are again living together with D.J.R. We cannot assume that husband is not interested in asserting his rights simply because he has not yet done so.

Although there are no cases addressing the specific issue before us, we note that Minn.Stat. § 257.60 also makes mandatory the joinder of the child to a paternity action in certain instances. We have previously reversed and remanded paternity adjudications when children have not been joined as necessary parties. *See, e.g., Kelly v. Cataldo*, 488 N.W.2d 822, 828 (Minn. App.1992) ("Having regard for the statutory mandate of party status for the child, we can find no acceptable rationale for excluding the child from the process of addressing the difficult considerations on conflicting presumptions of fatherhood."), *review denied* (Minn. Sept. 15, 1992). We apply this same rationale to paternity adjudications when known presumptive fathers have not been joined as necessary parties. This analysis is consistent with other jurisdictions that have addressed identical language in the Uniform Parentage Act. *See, e.g., Roberts v. Roberts*, 920 S.W.2d 144, 146 (Mo.App.1996) (reversing and remanding for failing to join a presumptive father); *State ex rel. Goodno v. Cobb*, 567 So.2d 376, 379 (Ala.Civ.App. 1990) (reversing, in part, for failing to join a presumptive father), *overruled on other grounds by Ex parte C.A.P.*, 683 So.2d 1010 (Ala.1996); *see also* Minn.Stat. § 645.22 (2010) ("Laws uniform with those of other states shall be interpreted and construed to effect their general purpose to make uniform the laws of those states which enact them.").

■ Reily argues that appellant's motion to join husband was defective for two reasons: (1) "[h]is memorandum of law to the district court did not refer in any way to the statute" and (2) his motion to join husband was included with his motion to deny summary judgment which suggested that it was untimely or made for purposes of delay. First, we note that appellate courts have a responsibility "to decide cases in accordance with law, and that responsibility is not to be diluted by counsel's oversights, lack of research, failure to specify issues or to cite relevant authorities." *State v. Hannuksela*, 452 N.W.2d 668, 673 n. 7 (Minn.1990) (quotation omitted). Second, it was less than two months from the time appellant requested that the county join husband as a party to when appellant moved the district court to do so. There is no time limit in Minn.Stat. § 257.60 within which one must bring a motion to join a necessary party, and the relatively short time period here does not suggest to us that appellant made his motion for purposes of delay. For these reasons, we do not find Reily's arguments to be persuasive.

Because Minn.Stat. § 257.60 requires all presumptive fathers and alleged biological fathers to be joined as parties and because there is no valid reason to ignore the plain language of the statute, we conclude that the district court erred when it denied appellant's motion to add husband as a party. Because we are reversing and remanding for additional proceedings that include husband as a party, we need not address appellant's argument that the district court erred by awarding summary judgment to the county.

## II.

Appellant argues that the district court abused its discretion by adopting verbatim the county's proposed findings of fact and conclusions of law and observes that the district court's signature appears on the last page of the order just above the signed approval line of the Dakota County Attorney. Because we are reversing and remanding for joinder of husband, we need not reach this issue. We nonetheless once again express our disapproval of this practice, which produces orders that reflect the findings of the prevailing litigant rather than the district court's own scrutiny of the evidence and articulation of controlling legal principles.

■ "[T]he verbatim adoption of a party's proposed findings and conclusions of law is not reversible error per se." *Bliss v. Bliss*, 493 N.W.2d 583, 590 (Minn.App. 1992), *review denied* (Minn. Feb. 12, 1993). But we have strongly cautioned that this practice "raises the question of whether the [district] court independently evaluated each party's testimony and evidence." *Id.; see also Lundell v. Coop. Power Ass'n*, 707 N.W.2d 376, 380 n. 1 (Minn. 2006) ("We discourage district courts from adopting proposed findings of fact and conclusions of law verbatim because it does not allow the parties or a reviewing court to determine the extent to which the court's decision was independently made."). Here, the district court's posttrial procedure could create the appearance of an improper delegation of the judicial fact-finding function to one party. *See* Minn.Code Jud. Conduct 1.2 (2010) (providing that a judge must avoid the appearance of impropriety and partiality).

While the county may be correct in asserting that its proposed findings were sufficiently detailed to allow for adequate appellate review, this case presents two troubling issues that illustrate the pitfalls of verbatim adoption. First, the presence of the county attorney's signature block below the district court's signature apparently caused the court administrator to

erroneously enter the matter as a stipulated judgment, instead of a judgment in a contested case, such that appellant's counsel was initially prevented from scheduling a motion to stay judgment pending appeal and was thereby exposed to prejudice. Second, despite twice stating in the body of its adopted order (once in the findings of fact and once in the conclusions of law) that husband's presumption of paternity "is founded on the weightier considerations of policy and logic" (the statutory standard for establishing legal paternity when there are conflicting presumptions), the district court nonetheless adjudicated appellant as D.J.R.'s legal father. Whether or not, as the parties suggest, this discrepancy can be attributed to typographical errors, the judgment entered is indisputably, and squarely, at odds with the findings and conclusions in the order and creates the troubling impression that the district court did not independently review the proposed order.

### DECISION

Because husband is a presumptive father of the minor child, Minn.Stat. § 257.60 requires that he be a party to any paternity action. The district court erred by denying appellant's motion to join husband.

**Reversed and remanded.**