*This opinion is nonprecedential except as provided by
Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A25-1135**

In the Matter of the Civil Commitment of: Renee Jean Tapper.

**Filed December 1, 2025
Remanded
Ross, Judge**

Blue Earth County District Court
File No. 07-PR-25-1709

Steven D. Winkler, Brandt & Winkler, P.A., St. Peter, Minnesota (for appellant Renee Jean Tapper)

Patrick R. McDermott, Blue Earth County Attorney, Susan B. DeVos, Assistant County Attorney, Mankato, Minnesota (for respondent Blue Earth County Human Services)

Considered and decided by Ross, Presiding Judge; Frisch, Chief Judge; and Ede, Judge.

**NONPRECEDENTIAL OPINION**

**ROSS**, Judge

The district court civilly committed Renee Tapper after finding that she poses a substantial risk of harm to herself or others and that she needs medical treatment to stabilize her declining psychiatric condition. Tapper appeals, arguing that the district court adopted findings that lack sufficient detail for appellate review, concluded without sufficient factual support that she poses a substantial risk of harm to herself or others, and failed to provide reasons for rejecting a less-restrictive alternative to civil commitment. We hold that the district court's commitment order, which is a verbatim replica of the county's proposed

order, fails to include fact findings that are sufficient for our review of whether the evidence meets the civil-commitment statutory criteria. We therefore remand for the district court to make the necessary findings, but in the meantime, we leave in place Tapper's civil commitment to inpatient care.

**FACTS**

This appeal arises from the involuntary hospitalization and civil commitment of appellant Renee Tapper. Police encountered Tapper in April 2025 after responding to a report that she was experiencing paranoid delusions and threatened suicide in text messaging and a social-media post. The encounter led to Tapper's psychological evaluation at Mayo Clinic in Mankato during a 72-hour hold. Tapper there denied being suicidal but exhibited paranoia about being sexually harassed and assaulted by staff. The evaluating physician diagnosed Tapper with bipolar disorder and prescribed neuroleptic medication. Respondent Blue Earth County Human Services petitioned the district court to civilly commit Tapper for treatment, and the district court appointed two examiners to assess her eligibility for inpatient care. Tapper remained hospitalized and refused to take neuroleptic medications.

The district court held an evidentiary hearing in May 2025 to address the county's petition. At the hearing's conclusion, the district court orally granted the county's petition and later presented its decision as a written order, civilly committing Tapper to inpatient care by signing the 22-paragraph proposed order supplied by the county.

Tapper appeals.

2

**DECISION**

Tapper challenges the district court's decision civilly committing her to inpatient, hospitalized care. She contends, among other things, that the district court's fact findings are insufficient for appellate review. The district court must make civil-commitment findings "specifically," and it must "separately state its conclusions of law." Minn. Stat. § 253B.09, subd. 2(a) (2024). In ordering commitment, it must also "specifically state the proposed patient's conduct [that] is a basis for determining that each of the requisites for commitment is met." *Id.* We see two fundamental problems in the district court's findings and conclusion of law, hindering our ability to meaningfully review its civil-commitment decision.

The first problem is that the district court did not heed the supreme court's repeated cautioning against adopting any party's factual findings and legal conclusions verbatim, because wholesale adoption of a party's proposed order calls into question whether the district court has exercised the "skill and judgment" that it is expected to exercise. *Pederson v. State*, 649 N.W.2d 161, 163–64 (Minn. 2002) (quotation omitted). The supreme court has emphasized that "the practice of the verbatim adoption of a party's proposed findings and conclusions is hardly commendable." *Id.* at 163. It has recognized that this practice "can make it more difficult to determine whether a court exercised its own careful consideration of the evidence, of the witnesses, and of the entire case." *Dukes v. State*, 621 N.W.2d 246, 258 (Minn. 2001) (quotation omitted). It has stressed, "We discourage district courts from adopting proposed findings of fact and conclusions of law verbatim because it does not allow the parties or a reviewing court to determine the extent to which the court's

decision was independently made." *Lundell v. Coop. Power Ass'n*, 707 N.W.2d 376, 380 n.1 (Minn. 2006). Consistent with these concerns, more than thirty years ago we too began to "strongly caution that wholesale adoption of one party's findings and conclusions raises the question of whether the trial court independently evaluated each party's testimony and evidence." *Bliss v. Bliss*, 493 N.W.2d 583, 590 (Minn. App. 1992), *rev. denied* (Minn. Feb. 12, 1993); *see also County of Dakota v. Blackwell*, 809 N.W.2d 226, 230 (Minn. App. 2011). The record here reveals that the day after the hearing, the county provided the district court with its proposed findings, conclusions, and order, and the district court printed and signed that draft order with no changes. While it is true that verbatim adoption of a party's proposed order is not, standing alone, a basis to reverse, *Bliss*, 493 N.W.2d at 590, in this case we extend our deference to the district court's factual findings and its exercise of discretion reservedly.

The county does not allay our concerns by its emphasizing that the district court adopted the county's proposed order verbatim only after it ruled in the county's favor from the bench the day before. The district court's oral ruling is similarly inadequate for our review of whether the evidence meets the statutory criteria for civil commitment. And Tapper has relatedly identified a circumstance from which she urges us to conclude that the district court's decision to comprehensively adopt the proposed order did not result from its deliberate analysis and review. Although we recognize that a district court might sign a proposed order after determining that its wording matches the court's independent judgment, we agree with Tapper's suggestion that this might not have occurred here. The order's seventh numbered paragraph is the following unpunctuated sentence-fragment

4

finding: "7. The Interested Party statement indicated that Respondent had made statements about suicide and copies of the text message communications and posts supported[.]" The district court's failure to correct this error at least implies that it did not carefully consider the proposed order before adopting it as its own.

Tapper accurately highlights a second problem with the district court's order. Its adopted "fact findings" are mostly not actually fact findings. We view the record in the light most favorable to the district court's fact findings and rely on those findings unless they reflect clear error. *In re Civ. Commitment of Spicer*, 853 N.W.2d 803, 807 (Minn. App. 2014). Weighing evidence to determine and find facts is a different exercise from merely reciting testimony to report on what evidence was presented. A commitment order is factually deficient when the district court merely recites testimony rather than stating independently how it has weighed the testimony to determine the facts. *See id.* at 810–11. We evaluate the language of an order to distinguish fact findings from mere testimony recital. *Id.* Phrases that report party testimony, witness opinions, and witness assertions are telltale signs of merely recited testimony, not fact findings. *Id.* Most of the district court's eleven short paragraphs of its "Findings of Fact" here are comprised of only its reciting what testimony and other evidence existed, such as, "The Court's file contains" specified documents; "Dr. Scharlepp testified that . . . ."; "The Interested Party statement indicated that . . . ."; "Both examiners noted that . . . ."; "According to Dr. Scharlepp . . . ."; "According to Dr. Marshall . . . ."; and so forth. And the order includes no express credibility findings. The district court does make the ultimate finding "that Respondent meets the criteria as a person who poses a risk of harm due to a mental illness," but this

sort of conclusory finding does little to facilitate our review of whether the evidence supports the fact findings and whether the findings support the legal conclusions. Its other findings recite statutory language, recount the procedural background of the case, or speculate about harm that Tapper faces without drawing from specific evidence in the record to bolster the concern.

We are therefore persuaded by Tapper's contention that the district court's fact findings are insufficient for our appellate review and by her related arguments that the findings are insufficient to establish that her mental illness impairs her ability to obtain necessary medical care and that alternatives to commitment are unavailable. *See* Minn. Stat. §§ 253B.09, subd. 1(a), 253B.02, subd. 17a(a)(1) (2024) (providing that civil commitment is appropriate when a person poses a risk of harm to herself or others due to her mental illness and when there are no suitable alternatives to commitment). In sum, we have no choice but to return the case to the district court to undertake the appropriate analysis, make necessary fact findings, and provide supported conclusions of law bearing on the county's civil-commitment petition. Out of concern for possible risk to Tapper as discussed by witnesses at the commitment hearing, however, we do not require the district court to discharge her from hospitalized commitment during the remand proceedings, which we direct the district court to undertake expeditiously in the interest of her civil rights.

**Remanded.**