*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-2192**

In the Matter of the Civil Commitment of: Jeremy Michael Bilder

**Filed June 1, 2015
Affirmed
Connolly, Judge**

Ramsey County District Court
File No. 62-MH-PR-14-176

Alan D. Margoles, Michelle Speeter Margoles, Margoles & Margoles Law Firm, St. Paul, Minnesota (for appellant)

John J. Choi, Ramsey County Attorney, Stephen P. McLaughlin, Assistant County Attorney, St. Paul, Minnesota (for respondent)

Considered and decided by Connolly, Presiding Judge; Peterson, Judge; and Worke, Judge.

# UNPUBLISHED OPINION

**CONNOLLY**, Judge

Appellant argues that (1) civilly committing him to the Minnesota Sex Offender Program (MSOP) was not the least restrictive alternative under Minn. Stat. § 253D.07, subd. 3 (2014); (2) the district court erred in committing him as a sexually dangerous person (SDP) under Minn. Stat. § 253D.92, subd. 16 (2014); (3) the court erred in

committing him as a sexual psychopathic personality (SPP) under Minn. Stat. § 253D.02, subd. 15 (2014); and (4) the civil commitment and treatment act and MSOP are unconstitutional, as written and enforced, under the due-process clauses of the Minnesota and United States Constitutions. We affirm.

**FACTS**

Appellant Jeremy Bilder has an extensive history of engaging in inappropriate sexual behavior. In 1995, appellant admitted committing criminal sexual conduct in the second degree for engaging in sexual activities with his younger brother. Throughout his early adolescence, appellant engaged in similar incidents for which no delinquency petitions were filed.

In 2008, the state charged appellant with criminal sexual conduct in the fourth degree, stemming from appellant's sexual assault of his former girlfriend while she was incapacitated. Appellant pleaded guilty to the charged offense. The district court sentenced appellant to a 24-month stayed prison sentence, with credit for time served, and a ten-year conditional-release period.

In February 2009, appellant began sex offender treatment at Project Pathfinder. Project Pathfinder terminated appellant's treatment on April 30, 2010. After failing this court-ordered sex offender treatment, appellant's probation was terminated and his prison sentence was executed from June 2010 through June 2011. While appellant was in prison, a prison therapist reported that appellant inappropriately touched her after a one-on-one therapy session. Appellant was subsequently charged with violating offender

2

discipline regulations, including abuse/harassment, disorderly conduct, and assaulting staff.

On June 13, 2011, appellant began outpatient sex offender treatment at Alpha House. Appellant was terminated from treatment in February 2012. In September 2012, appellant began sex offender treatment at Lighthouse Psychological Services. In November 2012, appellant was suspended from treatment for dating a woman with a young child and for being at his girlfriend's home when the child was present, despite his conditional-release condition that he could not have contact with minors. Appellant was reincarcerated in February 2013 for violating this condition of conditional release. Appellant was given a second opportunity to attend treatment at Lighthouse, but was terminated from treatment in November 2013 for "dishonesty, manipulation, and demonstrating insufficient growth in the program." Appellant's parole agent recommended that his intensive supervised release be revoked and that he be incarcerated. Appellant was reincarcerated on November 13, 2013.

In 2014, while he was incarcerated, appellant married M.B., who had a four-year-old daughter, K.B. On April 14 an investigation specialist for level 3 sex offenders at the Minnesota Department of Corrections reported her concerns to the Ramsey County Attorney's Office about monitored telephone calls between appellant and his wife. She reported that, after appellant found out that he could be facing civil commitment, appellant told his wife that he intended to rape her and molest K.B. by digitally penetrating the child while she slept. Appellant told his wife, "I don't know why [K.B.] wants a dad as a pedophile . . . and who's gonna possibly hurt her when he comes

3

home[.]" When his wife asked him why he would hurt K.B., appellant stated "I can't promise you that I wouldn't do anything," and stated "[i]f I were you, I wouldn't trust [K.B.] around me." Appellant later asked his wife if she would allow him to sexually abuse K.B. and stated that they could "pretend that [appellant is] the doctor." Appellant asked his wife if she would report him if he did it, and she responded "[i]f I don't know about it, how can I do that[.]" Appellant responded that he would tell his wife if and when he molested K.B. K.B. was subsequently removed from the home by Ramsey County child protection services.

On April 25, 2014, the state filed a petition seeking to commit appellant as an SPP and SDP under Minn. Stat. § 253D.02, subds. 15, 16 (2014). On August 6-8, the district court held a trial on this issue. Based on the evidence at trial, the district court issued a detailed order committing appellant as an SDP and SPP to MSOP for an indeterminate period of time. This appeal followed.

## D E C I S I O N

In a petition for commitment as an SPP or SDP, the district court must find that the standards for commitment are met by clear-and-convincing evidence. Minn. Stat. § 253D.07, subd. 3. "We review the district court's factual findings under a clear error standard to determine whether they are supported by the record as a whole." *In re Civil Commitment of Ince*, 847 N.W.2d 13, 22 (Minn. 2014). "We give due deference to the district court as the best judge of the credibility of witnesses." *In re Civil Commitment of Crosby*, 824 N.W.2d 351, 356 (Minn. App. 2013) (affirming commitment as SPP and SDP), *review denied* (Minn. Mar. 27, 2013). We review legal issues, including whether

4

the record contains clear-and-convincing evidence to support the district court's conclusion that the standards for commitment were met, de novo. *Id.*

## I.

Appellant argues that "committing [him] to [MSOP] was not the least restrictive alternative under Minn. Stat. § 253D.07, [subd.] 3." We disagree.

The district court will commit a person to the secure confinement of MSOP if it finds clear-and-convincing evidence that the person is an SPP or is an SDP, unless "the person establishes by clear and convincing evidence that a less restrictive treatment program is available, is willing to accept the respondent under commitment, and is consistent with the person's treatment needs and the requirements of public safety." Minn. Stat. § 253D.07, subd. 3; *see also Ince*, 847 N.W.2d at 25-26. "Thus, by statute, the burden of proving that a less restrictive alternative exists rests on" the committed person. *Ince*, 847 N.W.2d at 25.

Appellant contends that "evidence establishes that incarcerating [him] at the Ramsey County Workhouse with treatment release to [an outpatient] sex offender treatment program" is a less restrictive means of treatment. The manager of that outpatient program is a licensed sex offender therapist who has treated over 200 sex offenders in an outpatient setting. After reviewing the record, he testified that he is willing to accept appellant into outpatient sex offender treatment. The district court noted that the manager "believes treatment outside of a prison setting would be more beneficial for [appellant]." But the district court credited the testimony of a duly qualified forensic psychologist and court-appointed examiner, who reviewed the manager's report and

5

noted that he failed to provide a risk analysis with respect to appellant's suitability for outpatient treatment. We defer to this credibility determination. *Crosby*, 824 N.W.2d at 356.

Additionally, there is no evidence in the record indicating that the manager evaluated appellant's risk of reoffending if he were treated on an outpatient basis, or whether the Ramsey County Workhouse is currently an option for appellant. In fact, two court-appointed psychological examiners determined that appellant needs to be treated in a secure environment. One court-appointed examiner testified that appellant continued to target M.B. and K.B. even while he was incarcerated, and concluded that, based on this fact, freedom in the community is inappropriate. He also testified that freedom in the community is particularly inappropriate because appellant lacks understanding of his triggers, offense cycles, arousal patterns, coping mechanisms, and grooming patterns because he never completed treatment. After considering the testimony of the manager and the court-appointed examiners, the district court concluded commitment was the least restrictive means of treating appellant because appellant "has shown that he has been unable to live independently in the community when he is in an unsupervised setting. He has been unable to comply with the rules and despite repeated warnings had contact with minors. [Appellant] is unable to comply with the rules while in the community."

Appellant also claims that Alpha House and Lighthouse are willing to accept him back into their treatment programs. In letters from 2012 and 2013, before appellant threatened to molest his stepdaughter, both facilities stated that appellant was welcome to reapply to their programs. Neither facility stated that appellant has been accepted into its

program nor made any statement regarding appellant's amenability to treatment. Consequently, because appellant has not met his burden of showing that his proffered alternative treatment options are readily available or consistent with the need for public safety, we conclude that the district court did not err by concluding that committing appellant to MSOP was the least-restrictive alternative under Minn. Stat. § 253D.07, subd. 3.

**II.**

Appellant argues that the district court erred by committing him as an SDP under Minn. Stat. § 253D.02, subd. 16. We disagree. To commit an individual as an SDP the district court must find that he: (1) has engaged in a course of harmful sexual conduct; (2) has manifested a sexual, personality, or other mental disorder or dysfunction; and (3) as a result, is likely to engage in acts of harmful sexual conduct. Minn. Stat. § 253D.02, subd. 16.

Appellant first argues that the district court erred by determining that he engaged in a course of harmful sexual conduct because it failed to make sufficient findings to support this conclusion. We disagree. There is a rebuttable presumption that conduct described as criminal sexual conduct in the first through fourth degrees creates a substantial likelihood that a victim will suffer serious physical or emotional harm. Minn. Stat. § 253D.02, subd. 8(b) (2014). The district court concluded that appellant engaged in a course of harmful sexual conduct after finding that he was adjudicated delinquent for criminal sexual conduct in the second degree in 1995 against his younger brother and convicted of criminal sexual conduct in the fourth degree against his ex-girlfriend in

2008. While appellant argues that "[t]he district court found that the two adjudications for criminal sexual conduct alone are enough to establish 'a course of harmful sexual conduct,'" the district court also found that appellant admitted to threatening behavior, disorderly conduct, and sexual behavior in 2014 while incarcerated for probation violations, and that appellant committed various offenses that were not prosecuted, including fondling a neighbor, having sexual relations with the family dog, and engaging in sexual activity with his older brother.

The evidence in the record supports this conclusion. While in prison, appellant inappropriately touched a prison therapist and threatened to sexually abuse his stepdaughter and rape his wife. One court-appointed examiner testified that appellant admitted to fondling a six-year-old neighbor when he was a teenager, and both court-appointed examiners testified that appellant suffers from pedophilia. Additionally, appellant's mother confirmed that she caught appellant having sexual relations with the family dog when he was a teenager. We therefore conclude that the district court made sufficient findings to support its conclusion that appellant has engaged in a course of harmful sexual conduct.

Appellant also argues that the district court erred in concluding that he is highly likely to engage in acts of harmful sexual conduct in the future. Again, we disagree. To determine whether a person is highly likely to reoffend, a district court must engage in a "multi-factor analysis." *Ince*, 847 N.W.2d at 23. The multi-factor analysis includes the following six factors, which are commonly known as the *Linehan* factors:

8

(a) the person's relevant demographic characteristics (e.g., age, education, etc.);

(b) the person's history of violent behavior (paying particular attention to recency, severity, and frequency of violent acts);

(c) the base rate statistics for violent behavior among individuals of this person's background (e.g., data showing the rate at which rapists recidivate, the correlation between age and criminal sexual activity, etc.);

(d) the sources of stress in the environment (cognitive and affective factors which indicate that the person may be predisposed to cope with stress in a violent or nonviolent manner);

(e) the similarity of the present or future context to those contexts in which the person has used violence in the past; and

(f) the person's record with respect to sex therapy programs.

*In re Civil Commitment of Spicer*, 853 N.W.2d 803, 807-08 (Minn. App. 2014) (quotation omitted). "The multi-factor analysis also must include any other type of relevant and reliable evidence, including evidence derived from actuarial risk assessments and structured clinical assessments." *Id.* (quotation omitted).

Appellant argues that the district court erred because it did not go through the *Linehan* factors. We disagree. The district court explicitly went through each *Linehan* factor in its order. After going through each factor, the district court concluded that the state "has proven by clear and convincing evidence that, as a result of [appellant's] past course of harmful sexual conduct, his mental disorders, and the resulting impairment of his ability to control his sexual impulses, it is highly likely that [appellant] will engage in further harmful sexual conduct if not treated in civil commitment." Appellant does not argue that the district court's findings concerning the *Linehan* factors were erroneous,

9

and issues not briefed on appeal are waived. *Melina v. Chaplin*, 327 N.W.2d 19, 20 (Minn. 1982). Because the district court properly applied the *Linehan* factors to appellant's case, we conclude that it did not clearly err by committing appellant as an SDP under Minn. Stat. § 253D.02, subd. 16.

### III.

Appellant argues that the district court erred in committing him as an SPP under Minn. Stat. § 253D.02, subd. 15, because the district court failed to make sufficiently particular findings of fact regarding its determination. Appellant's argument is based on his contention that the district court merely recited the testimony of witnesses without commenting independently upon their opinions, the foundation for their opinions, or credibility. We disagree.

To commit someone as a person with a sexual psychopathic personality, the district court must find: (1) a habitual course of misconduct involving sexual matters; (2) an utter lack of power to control sexual impulses; and (3) dangerousness to others. Minn. Stat. § 253D.02, subd. 15; *In re Linehan*, 518 N.W.2d at 613. The district court, after indicating that it reviewed the record, stated:

> Here, [appellant] has an extensive history of harmful sexual conduct beginning in the family home as a prepubescent youth and continuing into his adulthood. As his release from prison became imminent and he learned that he was being considered for commitment, he engaged in sexual threats and comments toward his four-year-old stepdaughter that resulted in additional sanctions while imprisoned. It is clear from his history, recent conduct, and the actuarial measures that he is likely to engage in future acts of sexual misconduct. Whether he is residing in the community, in a treatment facility, or

incarcerated, [appellant] has evidenced an utter lack of control of his sexual impulses.

Appellant does not challenge the veracity of these conclusions or argue that they are not supported by the record, but rather states that the district court did not engage in its own fact finding. Although the district court details the testimony of several witnesses, it also stated that it found that the court-appointed examiners both testified credibly. Because "[w]e give due deference to the district court as the best judge of the credibility of witnesses," *Crosby*, 824 N.W.2d at 356, and because appellant does not support his argument with specific instances of error, we conclude that the district court did not err by committing appellant as an SPP under Minn. Stat. § 253D.02, subd. 15.

**IV.**

Lastly, appellant argues that the civil commitment statute and MSOP are unconstitutional. We disagree. We review the constitutionality of a statute de novo. *Rew v. Bergstrom*, 845 N.W.2d 764, 776 (Minn. 2014). "Minnesota statutes are presumed constitutional and . . . our power to declare a statute unconstitutional must be exercised with extreme caution and only when absolutely necessary." *Hamilton v. Comm'r of Pub. Safety*, 600 N.W.2d 720, 722 (Minn. 1999). We will uphold a statute unless the challenger can demonstrate beyond a reasonable doubt that the statute is unconstitutional. *SooHoo v. Johnson*, 731 N.W.2d 815, 821 (Minn. 2007).

"[F]reedom from physical restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action." *Kansas v. Hendricks*, 521 U.S. 346, 356, 117 S. Ct. 2072, 2079 (1997) (quotation omitted). "Due

process requires that the nature of commitment bear some reasonable relation to the purpose for which the individual is committed." *Foucha v. Louisiana*, 504 U.S. 71, 79, 112 S. Ct. 1780, 1785 (1992). "Whether a confinement scheme is punitive has been the threshold question for some constitutional challenges," including due-process challenges. *Seling v. Young*, 531 U.S. 250, 266, 121 S. Ct. 727, 737 (2001). In order to satisfy substantive due process, a civil-commitment statute must "couple[ ] proof of dangerousness with the proof of some additional factor" in order to "limit involuntary civil confinement to those who suffer from a volitional impairment rendering them dangerous beyond their control." *Hendricks*, 521 U.S. at 358, 117 S. Ct. at 2080.

Minnesota caselaw has stated that the purposes of the commitment statute are treatment and protection of the public, as opposed to punishment. *See In re Civil Commitment of Lonergan*, 811 N.W.2d 635, 642 (Minn. 2012); *Call v. Gomez*, 535 N.W.2d 312, 319-20 (Minn. 1995). And the Minnesota Supreme Court has upheld the commitment statute against substantive due-process challenges by concluding that the statute is narrowly tailored to satisfy due process. *In re Linehan*, 594 N.W.2d 867, 872-76 (1999); *see also In re Blodgett*, 510 N.W.2d 910, 916 (Minn. 1994).

Appellant also argues that the commitment statute violates his substantive due-process rights by not providing adequate treatment. But this court has previously stated that issues about the adequacy of sex offender treatment are procedurally premature at the time of or immediately after civil commitment. *In re Civil Commitment of Navratil*, 799 N.W.2d 643, 651 (Minn. App. 2011), *review denied* (Minn. Aug. 24, 2011); *In re Civil Commitment of Travis*, 767 N.W.2d 52, 58 (Minn. App. 2009); *In re Wicks*, 364 N.W.2d

844, 847 (Minn. App. 1985) (noting that "right-to-treatment issue is not reviewed on appeal from a commitment order"), *review denied* (Minn. May 31, 1985). We therefore conclude that appellant has not met his burden of showing that the commitment and MSOP statutes are unconstitutional.

**Affirmed.**