# STATE OF MINNESOTA
# IN COURT OF APPEALS
# A13-2120

In the Matter of the Civil Commitment of: Gary George Spicer.

**Filed August 18, 2014**
**Affirmed in part, reversed in part, and remanded**
**Johnson, Judge**

Sherburne County District Court
File No. 71-PR-13-8

Lori Swanson, Attorney General, John D. Gross, Assistant Attorney General, St. Paul, Minnesota; and

Kathleen A. Heaney, Sherburne County Attorney, Elk River, Minnesota (for respondent)

Ryan B. Magnus, Jennifer Thon, Jones and Magnus, Attorneys at Law, Mankato, Minnesota (for appellant)

Considered and decided by Johnson, Presiding Judge; Rodenberg, Judge; and Crippen, Judge.[*]

## S Y L L A B U S

The district court's findings of fact lack particularity and do not adequately demonstrate the district court's consideration of the factors relevant to determining whether appellant satisfies the criteria for commitment as an SDP or an SPP.

---

[*]Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art.VI, § 10.

# **O P I N I O N**

**JOHNSON**, Judge

The district court granted a petition to civilly commit Gary George Spicer as a sexually dangerous person (SDP) and a sexual psychopathic personality (SPP). On appeal, Spicer primarily challenges the district court's findings of fact with respect to both of the legal bases of his commitment. We conclude that the district court's findings lack particularity and do not adequately demonstrate the district court's consideration of the factors relevant to determining whether Spicer satisfies the criteria for commitment as an SDP or an SPP. We also conclude that the district court did not err with respect to an issue concerning the admissibility of the evidence. Therefore, we affirm in part, reverse in part, and remand for further findings and for further consideration of the applicable legal issues.

## **FACTS**

Spicer is a 50-year-old man whose civil commitment is based in significant part on three prior convictions of criminal sexual conduct.

In 2005, Spicer pleaded guilty in Sherburne County to one count of fifth-degree criminal sexual conduct based on his admission that he sexually assaulted a step-daughter, R.S., in 2004, when she was 19 years old, and one count of attempted fifth-degree criminal sexual conduct based on his admission that he attempted to sexually assault a friend of T.S., another step-daughter, in 2004, when she was 15 years old. The district court pronounced sentences of one year of imprisonment and 180 days of imprisonment, respectively, but stayed imposition of the sentences and placed Spicer on

2

probation. As conditions of his probation, the district court ordered Spicer to complete a sex-offender treatment program and to refrain from any unsupervised contact with girls.

In 2012, Spicer pleaded guilty in Sherburne County to one count of fourth-degree criminal sexual conduct based on his admission that he sexually assaulted another step-daughter, E.R., in 2011, when she was 22 years old. The district court imposed an executed sentence of 24 months of imprisonment and ordered that Spicer be evaluated for civil commitment before his release from prison.

Spicer's civil commitment also is based, in part, on multiple incidents of sexual misconduct that did not result in criminal prosecution. Spicer disclosed information about these incidents during sex-offender treatment and testified about them at trial. According to his own testimony, Spicer engaged in sexual contact with T.S. on 10 to 20 occasions when she was between two and four years old. He did so by placing his penis in her mouth, ejaculating onto her face, touching her vagina with his penis, and touching her vagina with his mouth. Spicer also engaged in sexual contact with R.S. on approximately five occasions starting in 1990, when she was five years old, and on six occasions throughout her teen years, in addition to the sexual assault of R.S. for which he was criminally prosecuted. Spicer also engaged in sexual contact with another 15-year-old friend of T.S. in 2004 by repeatedly touching her breasts.

In January 2013, Sherburne County petitioned the district court to civilly commit Spicer as an SDP and an SPP. The district court appointed two psychologists, Thomas Alberg, Ph.D., and Mary Kenning, Ph.D. The county retained Peter Marston, Ph.D., as an expert witness. Each psychologist submitted a written report before trial. Dr. Alberg

and Dr. Marston opined that Spicer satisfies the criteria for commitment both as an SDP and an SPP. Dr. Kenning, however, opined that Spicer does not satisfy the criteria for commitment as an SDP. Dr. Kenning did not offer an opinion as to whether Spicer satisfies the criteria for commitment as an SPP.

A four-day trial was held in May 2013. The district court heard testimony from the three psychologists, Spicer, his former wife, and his intensive-supervised-release agent. In September 2013, the district court issued a 79-page order in which it concluded that Spicer satisfies the criteria for commitment as both an SDP and an SPP, granted the county's petition, and ordered that Spicer be committed indefinitely to the custody of the commissioner of human services. In October 2013, Spicer moved for a new trial, seeking more particular findings; the district court denied the motion. Spicer appeals.

## ISSUES

I.      Did the district court err by concluding that Spicer is an SDP?

II.     Did the district court err by concluding that Spicer is an SPP?

III.    Did the district court err by allowing the county to bring one of the victims of Spicer's criminal sexual conduct into the courtroom so that the district court could observe her?

## ANALYSIS

## I.

Spicer argues that the district court erred by concluding that he satisfies the criteria for commitment as an SDP.

4

The county has the burden of proving the necessary facts by clear and convincing evidence. Minn. Stat. §§ 253B.18, subd. 1(a), .185, subd. 1(a) (2012). On appeal, this court applies a clear-error standard of review to the district court's findings of fact and reviews the record in the light most favorable to the findings of fact. Minn. R. Civ. P. 52.01; *In re Joelson*, 385 N.W.2d 810, 811 (Minn. 1986); *In re Civil Commitment of Navratil*, 799 N.W.2d 643, 647 (Minn. App. 2011), *review denied* (Minn. Aug. 24, 2011). We apply a *de novo* standard of review to the question whether the facts found by the district court satisfy the statutory criteria for commitment, which is a question of law. *In re Linehan*, 518 N.W.2d 609, 613 (Minn. 1994) (*Linehan I*).

### A.

A person is an SDP if he:

> (1)    has engaged in a course of harmful sexual conduct as defined in [section 253B.02,] subdivision 7a;

> (2)    has manifested a sexual, personality, or other mental disorder or dysfunction; and

> (3)    as a result, is likely to engage in acts of harmful sexual conduct as defined in subdivision 7a.

Minn. Stat. § 253B.02, subd. 18c(a) (2012). The third statutory requirement is satisfied if a person is "highly likely" to reoffend by engaging in acts of harmful sexual conduct in the future. *In re Civil Commitment of Ince*, 847 N.W.2d 13, 22 (Minn. 2014).

In this case, Spicer does not challenge the district court's findings with respect to the first and second requirements of the SDP statute. He argues only that the district court erred with respect to the third requirement by finding that he is highly likely to

reoffend. To determine whether a person is highly likely to reoffend, a district court must engage in a "multi-factor analysis." *Id.* at 23. The multi-factor analysis includes the following six factors, which are commonly known as the *Linehan* factors:

> (a) the person's relevant demographic characteristics (*e.g.*, age, education, etc.); (b) the person's history of violent behavior (paying particular attention to recency, severity, and frequency of violent acts); (c) the base rate statistics for violent behavior among individuals of this person's background (*e.g.*, data showing the rate at which rapists recidivate, the correlation between age and criminal sexual activity, etc.); (d) the sources of stress in the environment (cognitive and affective factors which indicate that the person may be predisposed to cope with stress in a violent or nonviolent manner); (e) the similarity of the present or future context to those contexts in which the person has used violence in the past; and (f) the person's record with respect to sex therapy programs.

*Id.* at 22 (quoting *Linehan I*, 518 N.W.2d at 614). The multi-factor analysis also must include any other type of "relevant and reliable evidence," including evidence derived from actuarial risk assessments and structured clinical assessments. *Id.* at 23-24. But a district court must "be wary of the potential factor repetition that can result from considering the *Linehan* factors in addition to multiple actuarial assessments that use different approaches based on factors that are the same as or similar to the *Linehan* factors." *Id.* at 24.

**B.**

As is typical in cases of this type, the experts in this case utilized a battery of psychological assessments to guide their professional analysis of Spicer's likelihood of reoffending. Each of the experts used the Static-99R actuarial risk assessment in

6

conjunction with the SRA-FV assessment. Together, these two assessments produce a statistical prediction of a person's likelihood of reoffending based on both static and dynamic risk factors. In addition, each of the experts also used a variety of structured clinical assessments that identify whether certain dynamic risk factors for reoffending are present, such as sexual deviance, psychopathy, and past supervision failures. All three experts agree that the actuarial risk assessment indicates that Spicer has a 24% probability of reoffending over his lifetime. The experts disagree, however, about the weight to give to this statistical probability.

Dr. Alberg testified that Spicer's likelihood of reoffending is higher than indicated by this statistical probability because it does not account for certain dynamic factors that increase his likelihood of reoffending. Specifically, Dr. Alberg cited Spicer's inability to follow through on the terms of his conditional release, his inability to self-regulate, and the general instability in his lifestyle. Based on the result of the actuarial assessment and these additional factors, Dr. Alberg opined that Spicer is highly likely to reoffend sexually.

Dr. Marston wrote in his report that Spicer's likelihood of reoffending is higher than indicated by the actuarial assessment. Dr. Marston testified that Spicer's probability of reoffending should be increased based on dynamic factors such as his "multiple paraphilic interests" as well as his "moderately high psychopathic personality and intellectual brightness." Based on these additional factors, Dr. Marston wrote in his report that Spicer is highly likely to reoffend. But Dr. Marston later testified that Spicer's likelihood of reoffending is less than "more likely than not."

7

Dr. Kenning wrote in her report that Spicer's likelihood of reoffending is not higher than 24%. Dr. Kenning testified that the Static-99R assessment, when used in conjunction with the SRA-FV assessment, already accounts for all relevant dynamic factors. Accordingly, Dr. Kenning opined that Spicer is not highly likely to reoffend.

The district court found "Drs. Alberg and Marston's opinions more credible and persuasive [than] Dr. Kenning's opinion." The district court concluded by finding that "it is highly likely that Mr. Spicer will engage in further harmful sexual conduct and he is dangerous to others."

## C.

Spicer contends that the district court erred by failing to make sufficiently particular findings of fact.

The supreme court has discussed the minimum requirements of district court findings in sex-offender commitment cases on two occasions. In *Linehan I*, the district court concluded that the appellant was an SPP based on a conclusory finding that he "shows an utter lack of power and ability to control his sexual impulses." 518 N.W.2d at 613. The district court had relied on the testimony of two experts, who testified inconsistently as to whether the appellant could control his behavior. *Id.* In light of the conflicting evidence, the supreme court stated, "It is not enough" for a district court to use language from the SPP multi-factor test "in a conclusory fashion." *Id.* at 614.

In *Ince*, the district court concluded that the appellant was an SDP based on the testimony of one expert, whom the district court found to be "particularly persuasive and convincing." 847 N.W.2d at 18. The district court stated in its order that it accepted this

expert's testimony and, unless otherwise noted, rejected the testimony of the experts who did not agree with the first expert. *Id.* But the first expert's testimony was inconsistent on the issue whether the appellant was highly likely to reoffend. *Id.* at 24-25. In light of the conflicting evidence, the supreme court stated that a district court may not "simply review[] the *Linehan* factors after largely accepting [one expert's opinions] without indicating the significance of any of those factors within the context of a multi-factor analysis." *Id.* at 24. The supreme court remanded with instructions to the district court to "comprehensively consider all relevant, reliable evidence" within the context of a multi-factor analysis. *Id.* at 24.

*Linehan I* and *Ince* are consistent with the supreme court's caselaw concerning findings of facts in other contexts. For example, in *Rosenfeld v. Rosenfeld*, 311 Minn. 76, 249 N.W.2d 168 (1976), a case concerning child custody, the supreme court held that a district court "must make written findings which properly reflect its consideration" of the relevant statutory factors. *Id.* at 82, 249 N.W.2d at 171. The supreme court noted that custody determinations are given deferential treatment by appellate courts and that, therefore, it is "especially important that the basis for the court's decision be set forth with a high degree of particularity if appellate review is to be meaningful." *Id.* (quotation omitted). The supreme court reasoned that requiring more particular findings would "(1) assure consideration of the statutory factors by the family court; (2) facilitate appellate review of the family court's custody decision; and (3) satisfy the parties that this important decision was carefully and fairly considered by the family court." *Id.* Following *Rosenfeld*, this court has reversed and remanded in custody cases if a district

9

court's findings on the relevant facts are insufficient. *See, e.g.*, *Reyes v. Schmidt*, 403 N.W.2d 291, 293 (Minn. App. 1987); *Schaapveld v. Schaapveld*, 398 N.W.2d 72, 75 (Minn. App. 1986); *Bjerke v. Wilcox*, 384 N.W.2d 250, 252 (Minn. App. 1986). The supreme court also has stated, in cases involving a termination of parental rights, that a district court's findings of fact must "provide insight into which facts or opinions were most persuasive of the ultimate decision." *See, e.g.*, *In re Welfare of M.M.*, 452 N.W.2d 236, 239 (Minn. 1990). We find these opinions from other contexts helpful in interpreting the requirements of *Linehan I* and *Ince*.

**D.**

In this case, the district court issued a 79-page order. The order consists of 11 paragraphs describing the procedural history of the case, 317 paragraphs of findings of fact, 10 paragraphs of conclusions of law, and 4 paragraphs that specify the relief awarded to the petitioner. The findings of fact are organized in sections with sub-headings such as "Childhood and Military Service," "Financial Condition," "Medical History," and "Sexual and Marital History." In each of these sections, the order painstakingly chronicles Spicer's life experiences. It appears that the findings of historical fact in these sections are largely undisputed. The order continues with 6 paragraphs that describe Spicer's testimony, 14 paragraphs that describe the testimony of lay witnesses, and 80 paragraphs that describe the testimony and written opinions of the expert witnesses. Included in these findings are 16 paragraphs that relate to the six *Linehan* factors. The order reflects a considerable degree of effort and care on the part of the district court judge.

Nonetheless, Spicer is correct in arguing that the district court's order does not make sufficiently particular findings of fact on the key issues. The district court's findings in this case are insufficient for three reasons.

First, the vast majority of the district court's findings are not truly findings of fact because they are merely recitations of the evidence presented at trial. For example, in paragraph 294, the district court found as follows:

> Dr. Alberg testified that Mr. Spicer's age does not lower his risk because he has already offended at an age where risk should have been reduced, he has an unstable relationship history, and some antisocial behavior. Dr. Marston testified that Mr. Spicer's age does not reduce his risk because research has shown that pedophiles often do not have a decrease in their sex drive as they age. . . . Dr. Kenning opined that Mr. Spicer's gender increases his risk of re-offense.

This court previously has stated that findings beginning with phrases such as "'petitioner claims,' 'according to petitioner's application,' and 'respondent asserts,'" are not "true findings." *Dean v. Pelton*, 437 N.W.2d 762, 764 (Minn. App. 1989). This is so because a district court's "recitation of what others have observed is not a finding of fact that those observations are true." *Hassing v. Lancaster*, 570 N.W.2d 701, 703 (Minn. App. 1997). Accordingly, it is insufficient for a district court to "merely recite[] or summarize[] excerpted portions of testimony of [the] witnesses without commenting independently either upon their opinions or the foundation for their opinions or the relative credibility of the various witnesses." *M.M.*, 452 N.W.2d at 239. Our review of the district court's order reveals a relatively small number of paragraphs in which the

district court actually finds facts rather than recites evidence, but most of those findings relate to factual issues that are not in dispute.

Second, of the "true findings" concerning disputed issues, nearly all of them are stated in a conclusory manner. For example, after reciting the experts' testimony, the district court stated that it found "Drs. Alberg and Marston's opinions more credible and persuasive that Dr. Kenning's opinion." A district court cannot satisfy its obligation to find facts with particularity by simply adopting *in toto* the opinions of a particular expert. *See Ince*, 847 N.W.2d at 24. The problem with such an approach is illustrated by the fact that the experts' opinions in this case are varied and sometimes inconsistent. For example, the opinion of Dr. Alberg was not identical to the opinion of Dr. Marston. Also, Dr. Marston opined in writing that Spicer is "highly likely" to reoffend, but he also testified that Spicer's likelihood of reoffending is less than "more likely than not." Dr. Marston's testimony is not only internally inconsistent, but his latter statement appears to reflect a degree of uncertainty that is below the supreme court's "highly likely" standard. *See Ince*, 847 N.W.2d at 21-22. Because of the conclusory nature of the district court's findings of fact concerning matters of expert evidence, we are unable to determine which portions of which experts' opinions the district court relied on when making findings of fact and conclusions of law.

Third, the district court's findings of fact are not meaningfully tied to its conclusions of law. The district court's order states that it considered the *Linehan* factors, but the order does not explain what evidence the district court found most persuasive or least persuasive, which facts the district court found to be most important or

12

least important, or which *Linehan* factors were most significant in the ultimate resolution of the case. In the context of sex-offender commitment cases, the supreme court has stated that a district court must explain "the significance of any of [the *Linehan*] factors within the context of a multi-factor analysis." *See id*. at 24. Likewise, in the child-custody context, if a district court fails to sufficiently explain the connection between its findings and its conclusions, a remand is required. *See, e.g.*, *Maxfield v. Maxfield*, 452 N.W.2d 219, 221 (Minn. 1990); *Rogge v. Rogge*, 509 N.W.2d 163, 166 (Minn. App. 1993), *review denied* (Minn. Jan. 28, 1994). If there are inconsistent facts or testimony in the record, as in this case, such an explanation is particularly important. *See Ince*, 847 N.W.2d at 24-25.

For the foregoing reasons, the district court's findings are insufficient. *See Ince*, 847 N.W.2d at 24-25; *Linehan I*, 518 N.W.2d at 614. In reaching this conclusion, we recognize that a district court's responsibility in a case such as this one is a "difficult task," in significant part because of a "voluminous and complex" record. *Ince*, 847 N.W.2d at 23 (quotation omitted). We also recognize that our conclusion is somewhat counterintuitive in light of the length and scope of the district court's order. But the sheer volume of information contained in the district court's order is not determinative. Even a long order may be insufficient if it does not permit meaningful appellate review. An order does not permit meaningful appellate review if it does not identify the facts that the district court has determined to be true and the facts on which the district court's decision is based. *See Ince*, 847 N.W.2d at 21-22; *Linehan I*, 518 N.W.2d at 614; *see also M.M.*, 452 N.W.2d at 239; *Rosenfeld*, 311 Minn. at 82, 249 N.W.2d at 171.

13

In many ways, the insufficiency of the district court's findings appears to be a product of the manner in which the case was presented by the parties. In our judicial experience, it has become common in sex-offender commitment cases for counsel to submit an exceedingly large volume of information and materials, which tends to add complexity to an already-complex case and to set a pattern for further proceedings in that particular case. In this case, the county's petition is 39 pages long, consisting of 186 paragraphs. After the presentation of evidence, the county submitted a 78-page document containing 359 paragraphs of proposed findings and 8 paragraphs of conclusions of law. Spicer's counsel simultaneously submitted a 38-page document containing 125 paragraphs of proposed findings. Most of the parties' proposed findings are phrased as mere recitations of evidence. Our comparison of the parties' submissions and the district court's order reveals that the district court did not adopt either party's proposal verbatim. Yet it is no surprise that the district court's order is similar to the parties' submissions in style, length, and detail. The county's responsive brief appears to suggest that the length of the district court's order is a reason why the district court should be affirmed.

In our view, the manner of practice reflected in this case is to be avoided. A preoccupation with large quantities of detailed information often tends to obscure, rather than to reveal, the essential facts of a case. The district court's fact-finding task is made more difficult, not less difficult, when counsel submit hundreds of paragraphs of proposed findings of facts. In very few cases are such a large number of facts actually pertinent to a district court's legal analysis and the ultimate decision. In most cases, including this one, the submission of a large number of proposed findings tends to

14

frustrate any effort to make a distinction between the most-important facts, which are apt to turn the case one way or the other, and the less-important facts.

Therefore, we reverse and remand to the district court for further findings and further consideration of the issue whether Spicer is "'highly likely' to engage in acts of harmful sexual conduct." *See id.* at 22.

## II.

Spicer also argues that the district court erred by concluding that he satisfies the criteria for commitment as an SPP. To commit a person as an SPP, a petitioner is required to prove, by clear and convincing evidence, that a person "has evidenced, by a habitual course of misconduct with respect to sexual matters, an utter lack of power to control the person's sexual impulses and, as a result, is dangerous to other persons." Minn. Stat. § 253B.02, subd. 18b; *see also* Minn. Stat. §§ 253B.18, subd. 1(a), .185, subd. 1(a).

Spicer contends that the district court erred by finding that he has an utter lack of power to control his sexual impulses. Spicer asserts that the SPP standard is a higher standard than the SDP standard. The district court's findings that relate specifically to the SPP issue are similar to the findings that relate specifically to the SDP issue. For essentially the same reasons, the district court erred by not making more particular findings on the issues relevant to whether Spicer is a SPP. Thus, we reverse and remand the SPP issue to the district court for further findings and further consideration.

**III.**

Spicer last argues that the district court erred by allowing E.R., one of the step-daughters whom he previously had sexually abused, to enter the well of the courtroom and appear before the district court. After Spicer testified, the county requested permission to bring E.R. before the district court so that the district court could observe E.R. and her behavior. Spicer objected. The district court stated in its final order that it allowed the courtroom appearance "because [Spicer's] testimony raised questions about E.R.'s intellectual capabilities and socialization abilities."

E.R.'s appearance in the courtroom, along with her mother, A.S., is reflected in the trial transcript as follows:

> THE COURT: Good morning. Can you tell me your names?
>
> [A.S.]: I'm [A.S.].
>
> E.R.: (No audible response.)
>
> THE COURT: You don't want to tell me? You don't have to. . . . [I]s there anything you do want to tell me?
>
> E.R.: (Shaking head.)
>
> THE COURT: You don't have to. That's not a problem. You don't have to. Thank you for coming in.

Spicer frames the issue as a matter of the admissibility of evidence. *See State v. Walen*, 563 N.W.2d 742, 749 (Minn. 1997). He contends that the district court erred because the probative value of E.R.'s courtroom appearance was substantially outweighed by the danger of unfair prejudice. Relevant evidence "may be excluded if its

16

probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Minn. R. Evid. 403. "Unfair prejudice under rule 403 is not merely damaging evidence, even severely damaging evidence; rather, unfair prejudice is evidence that persuades by illegitimate means, giving one party an unfair advantage." *State v. Schulz*, 691 N.W.2d 474, 478 (Minn. 2005). "The decision of whether to admit or exclude evidence is within the district court's discretion and will be reversed only if the court has clearly abused its discretion." *In re Civil Commitment of Ramey*, 648 N.W.2d 260, 270 (Minn. App. 2002), *review denied* (Minn. Sept. 17, 2002).

In this case, E.R.'s courtroom appearance had some probative value because it had a tendency to demonstrate her diminished intellectual and social capabilities, which would tend to indicate a lack of capacity to consent to sexual conduct with Spicer. The risk of unfair prejudice was low because the courtroom appearance occurred in the context of a court trial. The supreme court has stated that "excluding relevant evidence at a bench trial on the grounds of unfair prejudice is in a sense ridiculous" because "there is comparatively less risk that [a] district court judge, as compared to a jury of laypersons, would use the evidence for an improper purpose or have his sense of reason overcome by emotion." *State v. Burrell*, 772 N.W.2d 459, 467 (Minn. 2009) (quotation omitted). Accordingly, it does not appear that the probative value of the courtroom appearance was substantially outweighed by the risk of unfair prejudice.

17

Thus, the district court did not abuse its discretion by allowing the county to present E.R. to the district court in a brief courtroom appearance for the purpose of allowing the district court to observe her.

## DECISION

The district court did not err by granting the county's request to bring a person into the courtroom to allow the district court to observe the person. But the district court erred by not making findings of fact that are sufficiently particular to permit meaningful appellate review. Therefore, we reverse and remand to the district court for further findings and further consideration of the issues relevant to the county's claims that Spicer is an SDP and an SPP.

**Affirmed in part, reversed in part, and remanded.**