*This opinion will be unpublished and*
*may not be cited except as provided by*
*Minn. Stat. § 480A.08, subd. 3 (2016).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A16-1442**

In the Matter of the Civil Commitment of: David Josef Lovejoy.

**Filed February 13, 2017**
**Affirmed**
**Reilly, Judge**

Polk County District Court
File No. 60-PR-15-1549

Richard N. Sather, Sather Law Office, Ltd., Thief River Falls, Minnesota (for appellant)

Lori Swanson, Attorney General, Noah A. Cashman, Assistant Attorney General, St. Paul, Minnesota (for respondent)

Considered and decided by Reilly, Presiding Judge; Connolly, Judge; and Bjorkman, Judge.

## UNPUBLISHED OPINION

**REILLY**, Judge

Appellant argues that the district court erred in concluding that he satisfies the statutory criteria for civil commitment as a sexually dangerous person. We disagree and affirm appellant's commitment.

## FACTS

Appellant David Josef Lovejoy was born in 1966. He lived in Arizona from about 1977 to 2001. In 1995, the State of Arizona charged Lovejoy with felony sexual abuse of 16-year-old female K.M.L., alleging that Lovejoy touched K.M.L.'s breasts and bare

buttocks without her consent and attempted to touch her genitals without her consent. In 1996, Lovejoy pleaded guilty to an amended charge of attempted sexual abuse of K.M.L., an "undesignated offense" under Arizona law; he was adjudicated guilty and received a suspended sentence and lifetime probation. In 1997, Lovejoy violated the conditions of his probation and received three months in Maricopa County jail. In 1999, Lovejoy's probation was revoked, and he was sentenced to one year's imprisonment for attempted sexual abuse of K.M.L. Lovejoy was released from an Arizona prison in or around January 2000.

In or around March 2001, Lovejoy moved to Florida. In April 2001, Lovejoy was accused of and admitted to spanking his infant daughter A.L. in frustration, leaving bruises on her buttocks. About two months later, Lovejoy returned to Arizona, but he did not register as a sex offender as required by Arizona law. The State of Florida charged Lovejoy with felony child abuse of A.L., and the State of Arizona charged Lovejoy with failure to register as a sex offender. In October 2001, Lovejoy pleaded guilty to the Arizona charge of failure to register as a sex offender and returned to or was extradited to Florida, where he pleaded guilty to an amended charge of misdemeanor battery of A.L. In or around December 2001, Lovejoy was adjudicated guilty of the battery offense and sentenced to six months in Brevard County jail.

After serving that sentence, Lovejoy was extradited to Arizona, adjudicated guilty of his offense of failure to register as a sex offender, and sentenced to probation. In or around July 2003, Lovejoy absconded to Illinois in violation of the conditions of his probation, and he did not register as a sex offender as required by Illinois law. In or around

2

August 2003, Lovejoy was arrested and extradited to Arizona. There his probation was revoked, and he was sentenced to 2.5 years' imprisonment for his Arizona offense of failure to register as a sex offender. Lovejoy was released from an Arizona prison in July 2005.

In or around December 2006, Lovejoy moved to Minnesota. On April 8, 2009, adult female R.L.K. reported to Crookston police that Lovejoy tied her up and forcibly raped her; police began investigating R.L.K.'s allegations. The next day, adult female T.J.G. reported to Crookston police that Lovejoy may have drugged and raped her; police began investigating T.J.G.'s allegations. Police collected and tested DNA evidence, which did not support either woman's allegations. Lovejoy was never criminally charged in connection with these allegations.

On September 3, 2009, Crookston police received a report that Lovejoy may have sexually abused A.T.S., Lovejoy's three-year-old stepdaughter; police began investigating these allegations. A.T.S. did not mention any sexual abuse during a September 4, 2009 interview by a social worker. A September 8, 2009 medical examination of A.T.S. did not indicate sexual abuse.

On or about July 30, 2011, the mother of four-year-old female J.M.R.G. reported to Crookston police that Lovejoy, who was her roommate, may have sexually abused J.M.R.G.; police began investigating these allegations. During an August 1, 2011 interview by a social worker, J.M.R.G. disclosed that Lovejoy touched her genitals "all the time" with his genitals and buttocks, that the touching sometimes occurred while her clothes were off, that the touching occurred inside her body, and that the touching hurt her.

3

On August 3, 2011, Crookston police interviewed Lovejoy, who denied sexually abusing J.M.R.G. and consented to the seizure and search of his laptop computer.

Polk County police then renewed their investigation of Lovejoy's suspected sexual abuse of A.T.S. During an August 16, 2011 interview by a social worker, A.T.S. made no disclosure of sexual abuse. A September 12, 2011 medical examination of A.T.S. did not indicate sexual abuse. On December 29, 2011, the Polk County Attorney declined to criminally charge Lovejoy in connection with Lovejoy's suspected sexual abuse of A.T.S.

Meanwhile, on August 22, 2011, Polk County police searched Lovejoy's laptop and found still images of child pornography. According to the National Center for Missing and Exploited Children, six of the images appear to contain identified child victims. On September 12, 2011, respondent State of Minnesota charged Lovejoy with ten counts of possession of pornographic work depicting a minor. On March 15, 2012, the state filed an amended complaint against Lovejoy, which added an 11th charge of possession of pornographic work depicting a minor. The 11 images on which the child-pornography charges were based depict children being subjected to sexual contact and penetration.

On March 26, 2012, Lovejoy entered an *Alford* plea to five counts of possession of pornographic work depicting a minor. On June 25, 2012, pursuant to Lovejoy's plea agreement with the state, the district court adjudicated Lovejoy guilty of five counts of possession of pornographic work depicting a minor and sentenced him on all five convictions, with concurrent sentences and a total effective sentence of 39 months' imprisonment. Lovejoy appealed his sentence, and we reversed and remanded to the district court to determine whether Lovejoy's child-pornography offenses arose from a

4

single course of conduct against multiple victims. *State v. Lovejoy*, No. A12-1711, 2013 WL 3779192, at \*2-3 (Minn. App. July 22, 2013). The district court concluded on remand that Lovejoy's child-pornography offenses arose from a single course of conduct against multiple victims and ordered recalculation of Lovejoy's criminal-history score. Lovejoy was resentenced on June 30, 2014; he was sentenced on only two of his five child-pornography convictions, with concurrent sentences and a total effective sentence of 20 months' imprisonment.

On March 19, 2013, while Lovejoy's sentencing appeal was still pending, the state charged Lovejoy with two counts of first-degree criminal sexual conduct against J.M.R.G. On June 24, 2014, Lovejoy entered an *Alford* plea to an amended charge of second-degree criminal sexual conduct against J.M.R.G. On July 9, 2014, just over a week after Lovejoy was resentenced for his child-pornography offenses and pursuant to Lovejoy's plea agreement with the state, the district court adjudicated Lovejoy guilty of second-degree criminal sexual conduct against J.M.R.G. and sentenced him to 72 months' imprisonment, concurrent with his child-pornography sentences.

On September 1, 2015, the Polk County Attorney filed a petition to civilly commit Lovejoy as a sexually dangerous person (SDP). The district court appointed Dr. Linda Marshall and Dr. John Austin as Lovejoy's first and second examiners, respectively. On January 28, 2016, Dr. Marshall filed with the court a report opining that Lovejoy satisfies the statutory criteria for civil commitment as an SDP (SDP commitment). On February 11, 2016, Dr. Austin filed with the court a report indicating his support for Lovejoy's SDP commitment.

The district court conducted Lovejoy's civil-commitment hearing on February 23-25, 2016; Lovejoy, Dr. Marshall, and Dr. Austin testified at the hearing, and the court admitted nearly 4,000 pages of exhibits and 5 discs of digital evidence. On July 15, 2016, the court issued findings of fact, conclusions of law, and an order for judgment that Lovejoy be civilly committed as an SDP.

Lovejoy appeals.

## D E C I S I O N

To commit a person as an SDP, a district court must find by clear and convincing evidence that "the person: (1) has engaged in a course of harmful sexual conduct; (2) has manifested a sexual, personality, or other mental disorder or dysfunction; and (3) as a result, is likely to engage in acts of harmful sexual conduct." *In re Civil Commitment of Ince*, 847 N.W.2d 13, 20 (Minn. 2014); *see* Minn. Stat. §§ 253D.02, subd. 16(a) (providing that an SDP is "a person who: (1) has engaged in a course of harmful sexual conduct . . . ; (2) has manifested a sexual, personality, or other mental disorder or dysfunction; and (3) as a result, is likely to engage in acts of harmful sexual conduct"), .07, subd. 3 (conditioning SDP commitment on district court's finding "by clear and convincing evidence that the [person] is a[n SDP]") (2016).

> If the court finds by clear and convincing evidence that the [person] is a[n SDP] . . . , the court shall commit the person to a secure treatment facility unless the person establishes by clear and convincing evidence that a less restrictive treatment program is available, is willing to accept the [person] under commitment, and is consistent with the person's treatment needs and the requirements of public safety.

Minn. Stat. § 253D.07, subd. 3.

6

"[T]he commitment determination . . . is a difficult task often requiring consideration of a voluminous and complex record followed by a careful balancing of all the relevant facts," and "the district court is in the best position to weigh the evidence and assess credibility." *Ince*, 847 N.W.2d at 23-24 (quotation omitted). Consequently, "[w]e give due deference to the district court as the best judge of the credibility of witnesses," *In re Civil Commitment of Crosby*, 824 N.W.2d 351, 356 (Minn. App. 2013), *review denied* (Minn. Mar. 27, 2013), and we do not reweigh the evidence on appeal, *In re Linehan*, 557 N.W.2d 171, 189 (Minn. 1996) (*Linehan III*), *vacated sub nom. Linehan v. Minnesota*, 522 U.S. 1011, 118 S. Ct. 596 (1997), *aff'd on remand*, 594 N.W.2d 867 (Minn. 1999).

Instead, "[w]e review the district court's factual findings under a clear error standard to determine whether they are supported by the record as a whole," *Ince*, 847 N.W.2d at 22, and view the record in the light most favorable to the findings, *In re Civil Commitment of Spicer*, 853 N.W.2d 803, 807 (Minn. App. 2014). "We apply a de novo standard of review to the question whether the facts found by the district court satisfy the statutory criteria for commitment, which is a question of law." *Spicer*, 853 N.W.2d at 807 (citing *In re Linehan*, 518 N.W.2d 609, 613 (Minn. 1994) (*Linehan I* )).

On appeal, Lovejoy challenges the district court's determinations as to the first and third statutory criteria for SDP commitment, i.e., engagement in a course of harmful sexual conduct and likelihood of engagement in acts of harmful sexual conduct. He expressly disclaims any challenge to the district court's determination as to the second statutory criterion for SDP commitment, i.e., manifestation of a sexual, personality, or other mental disorder or dysfunction. And Lovejoy makes no argument that he established by clear and

convincing evidence an available and appropriate less restrictive alternative to civil commitment.

*Engagement in a course of harmful sexual conduct*

SDP commitment first requires the district court to find by clear and convincing evidence that the person has engaged in a course of harmful sexual conduct. *Ince*, 847 N.W.2d at 20; *see* Minn. Stat. §§ 253D.02, subd. 16(a), .07, subd. 3. A course of harmful sexual conduct is "a sequence or systematic series of sexual acts that create a substantial likelihood of serious physical or emotional harm to another." *In re Civil Commitment of Stone*, 711 N.W.2d 831, 833 (Minn. App. 2006), *review denied* (Minn. June 20, 2006); *see* Minn. Stat. § 253D.02, subd. 8(a) (2014) (defining "[h]armful sexual conduct" as "sexual conduct that creates a substantial likelihood of serious physical or emotional harm to another" (quotation marks omitted)); *The American Heritage Dictionary* 419 (5th ed. 2011) (defining "course" as "[a] systematic or orderly succession; a sequence").

> There is a rebuttable presumption that conduct described in the following provisions creates a substantial likelihood that a victim will suffer serious physical or emotional harm: section 609.342 (criminal sexual conduct in the first degree), 609.343 (criminal sexual conduct in the second degree), 609.344 (criminal sexual conduct in the third degree), or 609.345 (criminal sexual conduct in the fourth degree).

Minn. Stat. § 253D.02, subd. 8(b) (2014).[1]

---

[1] We refer to this presumption as "the harm presumption."

Here, the district court determined that the state established by clear and convincing evidence that Lovejoy has engaged in a course of harmful sexual conduct. That determination was based on the court's factual findings that Lovejoy committed criminal sexual conduct against K.M.L., committed criminal sexual conduct against J.M.R.G. "multiple times," and possessed child pornography;[2] that Lovejoy's conduct with K.M.L. and J.M.R.G. was "conduct . . . of the type which creates a substantial likelihood of serious physical or emotional harm to the victims"; that "[c]hildren depicted in images of child pornography suffer significant emotional and physical harm"; and that "those who view child pornography create a market that results in the sexual exploitation of children." The record includes the following evidence to support these findings.

In 1995, 16-year-old K.M.L. accused 29-year-old Lovejoy of touching her breasts and bare buttocks without her consent and attempting to touch her genitals without her consent. Lovejoy was convicted of attempted sexual abuse of K.M.L. At his civil-commitment hearing, Lovejoy admitted to "grabbing" K.M.L.'s breasts in anger; he also acknowledged that he "sexually offended against [K.M.L.]," that he "hurt" K.M.L., and that K.M.L. was one of his victims. Dr. Marshall testified that conduct like Lovejoy's conduct with K.M.L. "creates a likelihood of some harm" to the victim, which harm is "[p]rimarily emotional." And Dr. Austin testified that such conduct "affects the sense of developing confidence and strength" that is part of "a healthy psychological development."

---

[2] The district court found that the state failed to prove that Lovejoy committed criminal sexual conduct against R.L.K., T.J.G., or A.T.S.

9

On or about July 30, 2011, 4-year-old J.M.R.G. accused 45-year-old Lovejoy of touching her genitals "all the time" with his genitals and buttocks; she reported that the touching sometimes occurred while her clothes were off, that the touching occurred inside her body, and that the touching hurt her. After his *Alford* plea, Lovejoy was convicted of second-degree criminal sexual conduct against J.M.R.G. At his civil-commitment hearing, Lovejoy admitted that he parted J.M.R.G.'s bare labia with his bare penis, rubbed his bare penis against her bare vagina, and turned away and ejaculated. Lovejoy also acknowledged that J.M.R.G. was one of his victims. Dr. Marshall testified to her belief that Lovejoy offended against J.M.R.G. "more than once." Dr. Marshall further testified that conduct like Lovejoy's conduct with J.M.R.G. "would cause both . . . serious emotional and some physical harm to the victim." And Dr. Austin testified that such conduct would damage the victim's "trust and confidence and safety" and "interfere[] with her future healthy sexual development."

On August 22, 2011, police found child pornography on Lovejoy's laptop, including images of identified child victims and images of children being subjected to sexual contact and penetration. After his *Alford* plea, Lovejoy was convicted of five counts of possession of pornographic work depicting a minor. At his civil-commitment hearing, Lovejoy acknowledged that "the girls who were in those child pornography pictures" were among his victims. He explained, "The fact that I viewed porn knowingly and intentionally, I supported the industry, which made them victims in the first place. If there was no demand, there would be no need for a supply." Dr. Marshall testified that children who are depicted in pornography are "hurt" by "people looking at them on the internet," in that "the child

10

victims would have some emotional harm from that." And Dr. Austin testified that children who are depicted in pornography are "harmed" by "being in those positions and their images sent throughout the internet" and further testified that "the fact that other people access that information perpetuates that harm."

Finally, Dr. Marshall testified to her opinion that Lovejoy has engaged in a course of harmful sexual conduct, based on his criminal sexual conduct against K.M.L. and J.M.R.G. and his possession of child pornography. Dr. Austin likewise testified to his opinion that Lovejoy has engaged in a course of harmful sexual conduct, based on his criminal sexual conduct against K.M.L. and J.M.R.G. and his possession of child pornography. The district court expressly found credible the testimony of Dr. Marshall and Dr. Austin and "relie[d] on their opinions in its findings." Viewed in the light most favorable to the district court's factual findings, *see Spicer*, 853 N.W.2d at 807, the record as a whole supports the findings listed above, *see Ince*, 847 N.W.2d at 22.

But the court also found that K.M.L. was 15 years old at the time of the groping incident and that the incident therefore constituted fourth-degree criminal sexual conduct. The court then stated that fourth-degree criminal sexual conduct "fall[s] within the category of offenses where th[e harm] presumption applies" and noted that "Lovejoy has not presented sufficient evidence to rebut this presumption." As the state concedes on appeal, the record shows that K.M.L. was 16 years old at the time of the groping incident. Thus, the court clearly erred in finding that K.M.L. was 15 years old at the time of the groping incident and in finding that the incident constituted fourth-degree criminal sexual conduct rather than fifth-degree criminal sexual conduct. *See* Minn. Stat. §§ 609.345, subd. 1

11

(providing that fourth-degree criminal sexual conduct includes sexual contact where "the complainant is at least 13 but less than 16 years of age and the actor is more than 48 months older than the complainant"), .3451, subd. 1 (providing that fifth-degree criminal sexual conduct includes "nonconsensual sexual contact") (2014). The court also erred to the extent that it applied the harm presumption to Lovejoy's criminal sexual conduct against K.M.L. *See* Minn. Stat. § 253D.02, subd. 8(b) (providing that harm presumption applies to specified offenses, which do not include fifth-degree criminal sexual conduct).

Lovejoy argues that these errors warrant reversal of his SDP commitment because the state did not otherwise prove by clear and convincing evidence that his conduct with K.M.L. or his possession of child pornography was sexual conduct that creates a substantial likelihood of serious physical or emotional harm to another. As a result, Lovejoy continues, "there is not sufficient evidence to support a course of harmful sexual conduct."

Lovejoy is incorrect. The district court correctly applied the harm presumption to Lovejoy's conduct with J.M.R.G., which constituted at least second-degree criminal sexual conduct. *See* Minn. Stat. §§ 253D.02, subd. 8(b) (providing that harm presumption applies to specified offenses, which include second-degree criminal sexual conduct); 609.343, subd. 1 (providing that second-degree criminal sexual conduct includes sexual contact where "the complainant is under 13 years of age and the actor is more than 36 months older than the complainant") (2014). Lovejoy did not rebut this presumption with clear and convincing evidence that his conduct with J.M.R.G. was not sexual conduct that creates a substantial likelihood of serious physical or emotional harm to another. And as we determined above, the record as a whole supports the district court's finding that Lovejoy

12

committed criminal sexual conduct against J.M.R.G. multiple times; thus, that finding is not clearly erroneous. *See Ince*, 847 N.W.2d at 22.

Moreover, the district court also found that "even without relying upon the [harm] presumption, clear and convincing evidence showed that Lovejoy's conduct [with K.M.L. and J.M.R.G.] was of a type which creates a substantial likelihood of serious physical or emotional harm to the victims," that "[c]hildren depicted in images of child pornography suffer significant emotional and physical harm," and that "those who view child pornography create a market that results in the sexual exploitation of children." As we determined above, the record as a whole supports these findings, which therefore are not clearly erroneous. *See id.* Notwithstanding the district court's errors regarding the groping incident, we conclude that the court did not err in determining that the state proved by clear and convincing evidence that Lovejoy has engaged in a course of harmful sexual conduct, by committing criminal sexual conduct against J.M.R.G. multiple times and/or by committing criminal sexual conduct against K.M.L. and J.M.R.G. and possessing child pornography.

*Likelihood of engagement in acts of harmful sexual conduct*

SDP commitment also requires the district court to find by clear and convincing evidence that the person is likely to engage in acts of harmful sexual conduct. *Ince*, 847 N.W.2d at 20; *see* Minn. Stat. §§ 253D.02, subd. 16(a), .07, subd. 3. To find that a person is likely to engage in acts of harmful sexual conduct, the district court must find by "clear and convincing evidence that the person is *highly* likely to engage in acts of harmful sexual conduct." *Ince*, 847 N.W.2d at 22 (emphasis added).

13

When a court considers the probability that an offender will engage in future harmful sexual conduct, the court must evaluate: (1) the offender's demographic characteristics; (2) the offender's history of violent behavior; (3) the base-rate statistics for violent behavior among individuals with the offender's background; (4) the sources of stress in the offender's environment; (5) the similarity of the present or future context to those contexts in which the offender used violence in the past; and (6) the offender's record of participation in sex-therapy programs.

*Stone*, 711 N.W.2d at 840 (citing *Linehan I*, 518 N.W.2d at 614).

In this case, the district court determined that the state established by clear and convincing evidence that Lovejoy is highly likely to engage in acts of harmful sexual conduct. Although the court "gave weight" to the opinions of Dr. Marshall and Dr. Austin that Lovejoy is "highly likely" and "likely" to sexually reoffend, respectively, the court primarily based its third-criterion determination on factual findings resulting from the court's "independent[] appli[cation of] of the *Linehan* factors" to Lovejoy's case.

On appeal, Lovejoy does not assign error to any of these factual findings. Instead, he makes a cursory attack on the district court's third-criterion determination by arguing that "his lack of a course of conduct does not make it highly likely he will engage in future sexual conduct" and that Dr. Marshall and Dr. Austin "based their opinions as to a course of conduct on erroneous assumptions that [Lovejoy] perpetrated . . . acts . . . that were ultimately not proven."

These arguments fail as derivative of arguments already dismantled herein. As we determined above, the district court did not err in determining that the state proved by clear and convincing evidence that Lovejoy has engaged in a course of harmful sexual conduct.

14

And both Dr. Marshall and Dr. Austin testified that their shared opinion as to Lovejoy's course of harmful sexual conduct was based on his criminal sexual conduct against K.M.L. and J.M.R.G. and his possession of child pornography—offenses of which Lovejoy was convicted and to which Lovejoy himself largely admitted in open court. We reject Lovejoy's third-criterion arguments without further consideration.

**Affirmed.**