*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A23-0936**

In the Matter of the Civil Commitment of: Amy Jeankyoung Oh.

**Filed November 20, 2023
Affirmed
Gaïtas, Judge**

Hennepin County District Court
File No. 27-MH-PR-23-437

Kurt M. Anderson, Minneapolis, Minnesota (for appellant Amy Jeankyoung Oh)

Mary F. Moriarty, Hennepin County Attorney, Brittany D. Lawonn, Senior Assistant County Attorney, Minneapolis, Minnesota (for respondent Hennepin County Medical Center)

Considered and decided by Gaïtas, Presiding Judge; Slieter, Judge; and Halbrooks, Judge.[*]

**NONPRECEDENTIAL OPINION**

**GAÏTAS**, Judge

Appellant Amy Jeankyoung Oh challenges her civil commitment as a person who poses a risk of harm due to mental illness. Because we conclude that the district court did not err in its commitment decision, we affirm.

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

## FACTS

This appeal arises out of a district court order civilly committing Oh as a person who poses a risk of harm due to her mental illness and authorizing the involuntary administration of medication. Oh has a history of mental-health diagnoses and past civil commitments, most recently in 2019. In 2023, Oh's family became concerned for her welfare and sought assistance from mental-health assessors. Oh initially agreed to go to the hospital but then later asked to leave and declined assistance. Her behavior at this time was described as "paranoid, confused, tangential, and sometimes nonsensical." Oh was placed on a 72-hour hold and admitted into inpatient psychiatry at respondent Hennepin County Medical Center (HCMC).

A few days later, HCMC petitioned for judicial commitment and for an order authorizing the use of neuroleptic medication. It submitted a medical examiner's statement in support of this petition. The medical examiner reported that Oh was "significantly disorganized," "rambling," "paranoid," and "delusional." According to the medical examiner, "[d]ue to [Oh's] significant thought disorganization, paranoia and delusions, [she] appears at risk of harm to self and unable to care for self." Oh also lacked "sufficient awareness of [her] situation" to make a decision for herself regarding her treatment and medication. The medical examiner concluded that Oh had schizophrenia and should be committed to a treatment facility and treated with neuroleptic medication.

HCMC also submitted a report from a psychologist in support of the petition. The psychologist opined that Oh had schizophrenia and posed a substantial risk of harm to herself or to others. According to the psychologist's report, Oh's mental illness prevented

her from obtaining necessary food, clothing, shelter, and medical care. The psychologist observed that Oh showed "symptoms of delusions, paranoia, disorganization, loose associations, perseveration, and preoccupations." Further, the psychologist opined that Oh would not be able to follow through with treatment on a voluntary basis.

The district court held a trial on the petition. Oh agreed that the district court could take judicial notice of the psychologist's report, and the district court excused the psychologist from attending the trial. Additionally, Oh agreed that the district court could consider her medical records and other documentary evidence.[1] HCMC relied on the documentary evidence and did not present witness testimony at the trial.

Oh testified at trial. She did not have an opinion as to whether she had a mental illness, stating that she could not "really gauge that [herself]." On direct examination, Oh's attorney asked Oh if she had difficulty managing money and purchasing food for herself. Oh responded that she uses most of her money for pet care. On one occasion, she testified, she "completely ran out of money" at the end of the month and could not purchase food for herself for several days. But Oh testified that she was in "good health," and that she would take her medications, keep appointments, and cooperate with a social worker.

Following the trial, the district court granted the petition and adjudicated Oh as a person who poses a risk of harm due to her mental illness. The district court found that Oh was "ill with [s]chizophrenia" that "grossly impairs her judgment, behavior, capacity to

---

[1] Oh's attorney stipulated that the district court could consider the experts' reports, the medical records, and other documents submitted by HCMC "subject to the independent proof of any underlying facts."

recognize reality, and ability to reason or understand." It also authorized the involuntary administration of neuroleptic medication. The district court found that Oh "[did] not have the ability to understand and use information about her mental illness, its symptoms, and treatment," and could not "reliably take prescribed neuroleptic medication voluntarily in the community."

Oh appeals.[2]

## DECISION

I. **The district court did not err in civilly committing Oh as a person who poses a risk of harm due to her mental illness.**

In civil commitment appeals, an appellate court is limited to examining whether the district court complied with the commitment statute and determining whether the district court's findings support its conclusions of law. *In re Knops*, 536 N.W.2d 616, 620 (Minn. 1995). Appellate courts review the record in the light most favorable to the decision and defer to the district court's credibility determinations. *Id.* The district court's factual findings will be affirmed unless they are clearly erroneous. *In re Joelson*, 385 N.W.2d 810, 811 (Minn. 1986). The scope of clear-error review is narrow, as it "does not contemplate a reweighing of the evidence, inherent or otherwise; it is a review of the record to confirm that evidence exists to support the decision." *In re Civ. Commitment of Kenney*, 963 N.W.2d 214, 222 (Minn. 2021). Whether the supported factual findings and the record

_____

[2] Oh has since been provisionally discharged from commitment into residential treatment. During this provisional period, Oh must comply with the medication order and follow the recommendations of her medical providers, among other conditions. Violations of these provisions could result in her return to HCMC.

4

provide clear and convincing evidence to sustain the district court's legal conclusion that the statutory requirements for commitment were and continue to be met is a question of law, which we review de novo. *In re Civ. Commitment of Martin*, 661 N.W.2d 632, 638 (Minn. App. 2003), *rev. denied* (Minn. Aug. 5, 2003).

Oh makes two arguments on appeal regarding the civil commitment order: first, that the district court did not make sufficient findings of fact to support its decisions, and second, that the record does not support the factual findings the district court did make. Upon review, we conclude that the district court made sufficient factual findings and that clear and convincing evidence in the record supports these findings. Each argument is addressed in turn.

## A. The district court made sufficient findings of fact.

Oh argues that the district court's findings are inadequate to support an incapacity determination. The district court must make "sufficiently particular findings of fact on the key issues." *In re Civ. Commitment of Spicer*, 853 N.W.2d 803, 810 (Minn. App. 2014). It is insufficient for a district court to merely summarize or recite testimony without commenting on the relative credibility of the witnesses and tying the findings to the conclusions of law. *Id.*

Here, the district court did not merely summarize or recite testimony. Rather, its findings of fact reveal a thorough analysis of the condition of Oh's mental health. The district court found that Oh had a "past psychiatric history of schizophrenia." It described her current mental-health challenges and the assessment that Oh was "paranoid and talked about a number of delusional beliefs." Upon arriving at HCMC, Oh was "acutely

5

psychotic, unable to track conversation, skipping from one topic to another, paranoid . . . , and easily distracted." The district court also identified the testimony it relied on from Oh's mental-health providers in determining that Oh should be civilly committed. It reviewed the report from Oh's psychologist and found that Oh's "illness cannot be adequately treated by dismissal of the [p]etition, voluntary inpatient or outpatient care, the appointment of a guardian or conservator, or a conditional release." The district court further found that "[t]he least restrictive, appropriate, available placement is a commitment to the Commissioner of Human Services and the head of [HCMC]." While the district court explained that it "considered voluntary treatment or denying the petition," it rejected those alternative options "due to their inability to cope with [Oh's] present behavior and needs." The district court also commented on the credibility of the witnesses, specifically finding the psychologist's "report credible and her opinions and conclusions persuasive." Moreover, the district court's factual findings are tied to its ultimate conclusion of law that Oh is a person who poses a risk of harm due to her mental illness.

On this record, we are satisfied that the district court made findings of fact, assessed the credibility of the witnesses, and tied these findings to its conclusions of law. Thus, the district court made findings of fact that are sufficient both to support its commitment determination and to allow for meaningful appellate review.

**B.      The evidence in the record supports the district court's findings.**

Oh contends that even if the district court made adequate factual findings, the record evidence is insufficient to show that she poses a risk of harm to herself or to others due to her mental illness. To civilly commit a person with a mental illness, the district court must

6

"find[] by clear and convincing evidence that the proposed patient is a person who poses a risk of harm due to mental illness . . . , and after careful consideration of reasonable alternative dispositions . . . that there is no suitable alternative to judicial commitment." Minn. Stat. § 253B.09, subd. 1(a) (2022). The commitment statute defines a "person who poses a risk of harm due to a mental illness" as a person who has a substantial psychiatric disorder and who presents a demonstrated substantial likelihood of physical harm to self or others. Minn. Stat. § 253B.02, subd. 17a(a) (2022). A demonstrated likelihood of harm may be evidenced by an "inability for reasons other than indigence to obtain necessary food, clothing, shelter, or medical care as a result of the impairment" and a showing that "it is more probable than not that the person will suffer substantial harm, significant psychiatric deterioration or debilitation, or serious illness, unless appropriate treatment and services are provided." *Id.*, subd. 17a(a)(2).

The district court determined that Oh poses a risk of harm to herself or to others under this statutory provision, and the record contains clear and convincing evidence to support this determination. Record evidence confirms that Oh has a history of schizophrenia and multiple previous civil commitments. And the record shows that Oh's mental health deteriorated in 2023. Oh acknowledged when she met with mental health assessors in 2023 that she spent most of her money on her pets. She also told the assessors that people monitored her phone calls, broke into her car, and took money from her bank account. Oh agreed to go to the hospital, although she denied that she had mental-health problems and stated that she did not need medication. When she arrived at the hospital,

she showed "grossly psychotic symptoms and [an] inability to demonstrate capacity to care for self."

The record also contains the professional opinions of two experts who believed that Oh posed a risk of harm to herself or others when she was hospitalized in 2023. The medical examiner's statement in support of the commitment petition states that Oh was "significantly disorganized," "rambling," "paranoid," and "delusional." It states that, "[d]ue to [Oh's] significant thought disorganization, paranoia and delusions, [Oh] appears at risk of harm to self and unable to care for self." The medical examiner indicated that Oh did not have "sufficient awareness of [her] situation" to make a decision for herself regarding her treatment or her medication. And the medical examiner concluded that Oh has schizophrenia and should be committed to a treatment facility and treated with neuroleptic medication.

The psychologist's report—which Oh agreed the district court could consider in lieu of live testimony—states that Oh has schizophrenia and that Oh posed a substantial risk of harm to herself or to others. According to the psychologist, Oh showed "symptoms of delusions, paranoia, disorganization, loose associations, perseveration, and preoccupations." The psychologist did not believe that Oh could obtain the necessary food, clothing, shelter, or medical care she needed because of this illness. She also expressed concern about Oh's ability to manage her money, to follow through with treatment on a voluntary basis, and to make medical decisions for herself.

Oh did not present any contrary medical testimony at the trial. Instead, Oh testified that she did not have an opinion about whether she was mentally ill and preferred to "rely

8

on the doctor's opinion." She denied that she frequently runs out of food, although she acknowledged that most of her money is spent taking care of her pets. Oh admitted that on one occasion, she "completely ran out of money" at the end of the month and could not purchase food for herself for several days.

On appeal, Oh argues that the record contains other evidence that compels different factual findings. But we cannot reweigh the evidence or the district court's credibility determinations. *See Knops*, 536 N.W.2d at 620 (noting that "due regard shall be given to the opportunity of the trial court to judge the credibility of the witness"). "Where the findings of fact rest almost entirely on expert testimony, the [fact-finder's] evaluation of credibility is of particular significance." *Id.* "[C]lear-error review does not permit an appellate court to weigh the evidence as if trying the matter de novo" or to "engage in fact-finding anew." *Kenney*, 963 N.W.2d at 221-22 (quotations omitted). Here, the district court relied on the professional opinions of the medical examiner and the psychologist. Although the district court found Oh's testimony to be "honest and sincere," the district court's order states that Oh's testimony was "less persuasive than the documented evidence." Because we cannot reweigh the evidence, we decline Oh's request to make alternative factual findings.

We conclude that the district court made sufficient findings of fact and that clear and convincing evidence in the record supports these factual findings. In turn, these findings support the district court's legal determination that Oh could not "obtain necessary food, clothing, shelter, or medical care as a result of the impairment" and that it was "more probable than not that [she] will suffer substantial harm, significant psychiatric

9

deterioration or debilitation, or serious illness" without medical treatment. Minn. Stat. § 253B.02, subd. 17a(a)(2). Accordingly, the district court did not clearly err in making the findings of fact supporting its issuance of the civil commitment order.

## II.      Oh is not entitled to relief on her remaining arguments.

### A.      Oh forfeited her constitutional challenges.

Oh argues that she was deprived of her constitutional rights because the district court did not meaningfully review the referee's recommended order prior to signing it. She further challenges the constitutionality of Minnesota Statutes section 484.70, subdivision 7(f) (2022), which addresses appellate review of civil commitment orders. We conclude that Oh forfeited her claims by failing to present them to the district court. *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988) (declining to review an argument that was not considered and decided by the district court); *see also In re Civ. Commitment of Fugelseth*, 907 N.W.2d 248, 252 n.1 (Minn. App. 2018) (applying *Thiele* in a civil commitment case), *rev. denied* (Minn. Apr. 17, 2018). The commitment statute permits a litigant to seek review of the referee's proposed findings from a district court judge. Minn. Stat. § 484.70, subd. 7(d) (2022). Oh's counsel conceded during oral argument that Oh did not seek this review, and we appreciate counsel's candor on this point. Because Oh did not pursue review by a district court judge, we must deem these claims forfeited.

### B.      Oh withdrew her challenge to the medication order.

Oh originally challenged the district court's order authorizing the administration of neuroleptic medication. She later withdrew this argument in light of our deferential standard of review and clarified that the medication order should only be reversed if the

10

underlying commitment order is reversed. As discussed above, the district court did not err in determining that Oh is incapacitated due to her mental illness. Further, the record supports the medication order because Oh lacks capacity to make informed decisions regarding her medications. *See* Minn. Stat. § 253B.092 (2022) (establishing the procedures governing the administration of neuroleptic medication to patients subject to civil commitment as mentally ill). Thus, even if we reached the merits of this argument, we would conclude that the district court did not err by issuing an order authorizing the use of neuroleptic medication.

### C. Oh failed to show that the district court relied on improper evidence.

Oh argues that the district court may have improperly relied on hearsay evidence in making its decision. However, she does not identify the improper hearsay evidence at issue. And she does not explain how the evidence was improperly admitted under the rules of evidence or the caselaw. We do not presume error by the district court, and the party asserting error has the burden of showing it. *Horodenski v. Lyndale Green Townhome Ass'n*, 804 N.W.2d 366, 372 (Minn. App. 2011). Because Oh did not identify the alleged improper hearsay evidence or support her argument with legal authority, we do not address this argument further.

**Affirmed.**