In the Matter of the Welfare of the Child of B.J.-M. and H.W., Parents.

No. A07–272.

Supreme Court of Minnesota.

Feb. 21, 2008.

John Michael Jerabek, Niemi, Barr & Jerabek, P.A., Daniel Wade Homstad, Minneapolis, for Appellants.

Mary Martin Lynch, Asst. Hennepin County Atty., for Respondent.

## OPINION

ANDERSON, G. BARRY, Justice.

The Hennepin County Human Services Department (the County) filed a petition to terminate parental rights in relation to minor child T.W. The petition listed B.J.-M. as the child's mother and named her as

a party to the proceeding, but did not name the child's father, H.W., as a party. Instead, H.W. was listed as the alleged father and therefore only a participant in the litigation. On the first day of the scheduled trial on the termination of B.J.'M.'s parental rights, however, H.W. appeared in the action for the first time and acknowledged that he and B.J.-M. had previously signed a recognition of parentage form pursuant to Minn.Stat. § 257.75 (2006), and that H.W. was therefore T.W.'s legally recognized father. Although never named as a party, either by amendment to the existing petition or execution of a new petition, H.W. subsequently participated in a full adversarial trial, and the juvenile court ordered the termination of his parental rights. The Minnesota Court of Appeals affirmed. Based on our supervisory power to enforce the rules governing juvenile court proceedings, and in the interests of justice, we reverse the termination of H.W.'s parental rights and remand to the juvenile court for further proceedings.

On January 15, 2006, when she was 40 weeks pregnant, B.J.-M. tested positive for cocaine. Nine days later, on January 24, B.J.-M. gave birth to T.W, who was diagnosed with sepsis (a blood infection) and pneumonia. T.W. was admitted to the neonatal intensive care unit and was placed on a 72–hour health and welfare hold on January 26. On January 27, 3 days after T.W.'s birth, B.J.-M. and H.W. signed a recognition of parentage form affirming that H.W. is T.W.'s father.[1] The Hennepin County Juvenile Court subsequently granted interim legal custody of T.W. to the County and ordered that T.W. continue in out-of-home placement at an emergency protective care hearing. After a lengthy hospital stay, T.W. was discharged to foster care. She is physically and developmentally delayed.

On January 31, 2006, 1 week after T.W.'s birth, the County filed a petition to terminate parental rights or transfer permanent legal and physical custody with respect to T.W. The petition listed B.J.-M. as T.W.'s mother and a party to the proceeding, but listed H.W. as only T.W.'s alleged father. Because alleged fathers are participants—rather than parties—in termination of parental rights proceedings, *see* Minn. R. Juv. Prot. P. 21.01, subd. 3, 22.01(b), the petition did not name H.W. as a party to the proceeding but instead merely listed him as a participant.[2] The record suggests that the County attempted to serve H.W. with the petition by U.S. mail, but that H.W. did not receive the

---

**1.** Minnesota Statutes § 257.75, subd. 1, provides:

> The mother and father of a child born to a mother who was not married to the child's father nor to any other man when the child was conceived nor when the child was born may, in a writing signed by both of them before a notary public and filed with the state registrar of vital statistics, state and acknowledge under oath that they are the biological parents of the child and wish to be recognized as the biological parents.

This recognition of parentage procedure is one means of establishing a legally recognized father and child relationship, Minn.Stat. § 257.54(b) (2006), and "has the force and effect of a judgment or order determining the existence of the parent and child relationship," Minn.Stat. § 257.75, subd. 3.

**2.** The Minnesota Rules of Juvenile Protection Procedure distinguish between parties and participants. While parties have extensive rights to actively take part in the proceedings, Minn. R. Juv. Prot. P. 21.02, participants are only entitled to notice, to receive a copy of the petition, and to attend hearings, Minn. R. Juv. Prot. P. 22.02, subd. 1. In termination of parental rights proceedings, the parties include, inter alia, "the child's parents, including any noncustodial parent and any adjudicated or presumed father." Minn. R. Juv. Prot. P. 21.01, subd. 3. Alleged fathers, on the other hand, are merely participants. Minn. R. Juv. Prot. P. 22.01(b).

petition because the County did not have his current address.

On March 14, 2006, the juvenile court held an admit/deny hearing on the termination of parental rights petition. The court also held pretrial hearings on April 26 and June 1, 2006. H.W. did not appear at any of these hearings, but the record suggests that the court did not notify H.W. of these hearings.[3]

Trial on the petition to terminate parental rights was scheduled to take place on June 22 and June 26, 2006. On the first day of the scheduled trial, H.W. appeared in the action for the first time and acknowledged that he signed a recognition of parentage form. Following a discussion in chambers, those present agreed on the record that the trial would be delayed, and the court indicated that a public defender would be appointed to represent H.W. Although both the juvenile court and the County acknowledged that the petition to terminate parental rights needed to be amended to indicate that H.W. is an adjudicated, rather than alleged, father, the petition was never amended on the record, and no amended petition was ever filed with the court or served on H.W.

The juvenile court conducted a trial in this matter on October 9 and November 29, 2006. The court received approximately 73 exhibits into evidence, most of which were admitted by stipulation, and heard testimony from several witnesses. H.W. appeared on both days of trial, was represented by counsel, and actively participated in the proceedings. He testified on his own behalf and, through counsel, objected to the introduction of evidence, cross-examined witnesses, and made a closing argument. On January 5, 2007, the juvenile court ordered termination of B.J.-M.'s and H.W.'s parental rights to T.W. The Minnesota Commissioner of Human Services was appointed guardian and legal custodian of T.W.

On appeal, H.W. argued that the juvenile court erred because (1) the court terminated his parental rights on a basis that was not pleaded, (2) the court wrongly considered certain evidence, (3) the record did not support termination, (4) the County failed to adequately investigate transferring legal custody of T.W., and (5) the record did not support the finding that termination is in T.W.'s best interests. *See In re the Welfare of the Child of B.J.-M. and H.W., Parents,* No. A07–272, 2007 WL 2472572, at *1 (Minn.App. Sept.4, 2007). Although the absence of a petition naming H.W. as a party to the termination proceeding was not raised in the juvenile court or by the parties on appeal, the court of appeals noted in its opinion:

> This termination proceeding, like all others, involves sad and disturbing facts. But this case is also disturbing because of apparent procedural irregularities. Specifically, the district court file contains a petition to terminate mother's parental rights, but there is no petition to terminate father's rights. In addition, the file lacks any indication that father was served with a petition to terminate his parental rights, nor is there a copy of father's case plan.

*Id.* But the court of appeals concluded that H.W. had "waiv[ed] any procedural argument he may have had" regarding the pretrial proceedings by agreeing to a trial on the termination of his parental rights. *Id.* The court ultimately affirmed the juve-

---

**3.** Although it does not appear that H.W. received official notice of the admit/deny or pretrial hearings from the court, the social worker assigned to T.W.'s case testified at trial that he had told H.W. about the pretrial hearings during H.W.'s supervised visits with T.W.

nile court order. *Id.* at *1–6. On November 6, 2007, we granted H.W.'s petition for review.

■ Minnesota Statutes § 260C.301, subd. 1(b) (2006), provides that "[t]he juvenile court may upon petition, terminate all rights of a parent to a child * * * if it finds that one or more of the [statutory grounds for termination] exist." The "paramount consideration" in termination of parental rights proceedings is "the best interests of the child." Minn.Stat. § 260C.301, subd. 7 (2006). But as the United States Supreme Court has recognized, the termination of parental rights also implicates substantial and fundamental liberty interests of the parents:

> *Lassiter* declared it "plain beyond the need for multiple citation" that a natural parent's "desire for and right to the companionship, care, custody, and management of his or her children" is an interest far more precious than any property right. When the State initiates a parental rights termination proceeding, it seeks not merely to infringe that fundamental liberty interest, but to end it. "If the State prevails, it will have worked a unique kind of deprivation.... A parent's interest in the accuracy and justice of the decision to terminate his or her parental status is, therefore, a commanding one."

*Santosky v. Kramer,* 455 U.S. 745, 758–59, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982) (quoting *Lassiter v. Dep't of Soc. Servs.,* 452 U.S. 18, 27, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981)) (internal citations omitted).

Termination of parental rights proceedings are governed by the Minnesota Rules of Juvenile Protection Procedure. Minn. R. Juv. Prot. P. 1.01, 2.01(k). Under the rules, a termination of parental rights proceeding "is commenced by filing a petition with the court." Minn. R. Juv. Prot. P. 32.01. This petition must contain, inter alia, (1) a statement of the facts supporting termination; (2) the names and addresses of the child's parents, when known; (3) the statutory grounds supporting termination; (4) "the names and address of the parties identified in Rule 21, as well as a statement designating them as parties"; and (5) "the names and addresses of the participants identified in Rule 22, as well as a statement designating them as participants." Minn. R. Juv. Prot. P. 33.02, subd. 1. After the summons and petition are served, *see* Minn. R. Juv. Prot. P. 32.02, the juvenile court must hold an admit/deny hearing. Minn. R. Juv. Prot. P. 34.02(b). At this hearing, the court must determine whether the petition establishes a prima facie case supporting the termination of parental rights, Minn. R. Juv. Prot. P. 34.03, subd. 3, and the parents who are parties to the proceeding must "admit or deny the statutory grounds set forth in the petition or remain silent," Minn. R. Juv. Prot. P. 35.01, subd. 1. After the pretrial proceedings are complete, the juvenile court must conduct a trial "to determine whether the statutory grounds set forth in the petition are or are not proved." Minn. R. Juv. Prot. P. 39.01. "If the court finds that the statutory grounds set forth in the petition are proved, the court may terminate parental rights." Minn. R. Juv. Prot. P. 39.05, subd. 3.

■ Although we have not directly ruled on the issue, we have previously suggested that the termination of parental rights may only be based on a statutory ground listed in a petition. *See In re Welfare of Staat,* 287 Minn. 501, 505, 178 N.W.2d 709, 712 (1970) ("[W]e express doubt that this is a ground upon which the court's conclusion could be based. There is no evidence upon which termination under this ground could be justified. It was not even stated as a statutory ground in the welfare department's petition for ter-

mination of parental rights."). But the court of appeals has expressly held that a court cannot base the termination of parental rights "on a ground that is not stated in a petition to terminate rights." *In re the Welfare of the Child of T.D.*, 731 N.W.2d 548, 556 (Minn.App.2007). We believe that the Rules of Juvenile Protection Procedure unambiguously condition the termination of parental rights on a finding "that the statutory grounds set forth in the petition are proved," Minn. R. Juv. Prot. P. 39.05, subd. 3(a), and therefore agree with the court of appeals's conclusion in *T.D.* that the termination of parental rights cannot be based on a statutory ground that was not included in a petition to terminate parental rights.

■ There is no dispute that the proceedings in the present case did not follow these procedural rules. Despite the fact that B.J.-M. and H.W. had already signed a recognition of parentage form, thereby establishing a legally recognized father and child relationship between H.W. and T.W., no petition to terminate parental rights identified H.W. as T.W.'s legally recognized father or as a party to a termination proceeding. Indeed, the only petition in the juvenile court file merely listed H.W. as T.W.'s alleged father and a participant in the termination proceedings. Moreover, there is no evidence in the record that H.W. was served with the petition or that the juvenile court determined whether the petition established a prima facie case supporting the termination of H.W.'s parental rights. Finally, because H.W. was not identified as T.W.'s legally recognized father or named as a party in a petition to terminate parental rights, there were not any statutory grounds set forth in a petition upon which the termination of his parental rights could be based.

■ H.W. argues that because of these failures to follow the Rules of Juvenile Protection Procedure, the juvenile court violated his due process rights by terminating his parental rights. Although the amount of process due in a particular case varies with the unique circumstances of that case, *In re the Welfare of the Children of Coats*, 633 N.W.2d 505, 514 (Minn.2001); *In re the Welfare of HGB*, 306 N.W.2d 821, 825 (Minn.1981), prejudice as a result of the alleged violation is an essential component of the due process analysis, *see Bendorf v. Comm'r of Pub. Safety*, 727 N.W.2d 410, 415–17 (Minn.2007); *see also HGB*, 306 N.W.2d at 825. But because we conclude, based on our supervisory power to enforce the Rules of Juvenile Protection Procedure and in the interests of justice, that the failure to name H.W. as a party in a petition requires reversal of the juvenile court order terminating his parental rights, we need not address H.W.'s due process claim.

■ The authority to regulate the procedures governing judicial proceedings is an inherent judicial power. *See State v. Willis*, 332 N.W.2d 180, 184 (Minn.1983); *see also* Minn.Stat. § 480.0595 (2006) (authorizing this court to "promulgate rules to regulate the pleadings, practice, procedure and the forms thereof in juvenile proceedings"). We have previously exercised our supervisory power "prophylactically or in the interests of justice" to enforce the procedural rules governing an action by granting a new trial, even where no prejudice was suffered by the complaining party. *See State v. Salitros*, 499 N.W.2d 815, 820 (Minn.1993); *see also State v. Clifton*, 701 N.W.2d 793, 799 (Minn.2005); *State v. Kaiser*, 486 N.W.2d 384, 387 (Minn.1992).

■ Under the Minnesota Rules of Juvenile Protection Procedure, the petition to terminate parental rights is the document that classifies interested individuals as parties or participants, thereby defining their

rights in the proceeding. The filing of the petition also commences the action itself and triggers procedural safeguards, such as the pretrial admit/deny hearing, intended to protect the fundamental rights of parents to the custody and companionship of their children from undue interference by the government. There is no dispute that the rules governing this vital document were not followed in the present case. Based on the importance of the petition under the rules, we conclude, in the exercise of our supervisory power and the interests of justice, that a parent's parental rights cannot be terminated in the absence of a petition naming the parent as a party to the proceedings. Accordingly, we reverse the juvenile court order terminating H.W.'s parental rights and remand the matter to the juvenile court for further proceedings consistent with the Minnesota Rules of Juvenile Protection Procedure.[4]

Reversed and remanded.

4. The evidence adduced at trial, including T.W.'s physical and developmental delays and H.W.'s own physical disabilities and history of domestic violence, raises concerns about the continuation of H.W.'s parental rights. Because we decide this case on procedural grounds, we do not reach these issues and express no opinion as to whether the evidence adduced thus far supports termination of H.W.'s parental rights or as to whether termination of H.W.'s parental rights is in the best interests of T.W.