*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A23-1757**

In the Matter of the Welfare of the Children of:
P. P. (f/k/a P. P.) and P. P., Parents.

**Filed May 6, 2024**
**Affirmed**
**Frisch, Judge**

Otter Tail County District Court
File No. 56-JV-23-1509

Anne M. Carlson, Anne M. Carlson Law Office, PLLC, St. Paul, Minnesota (for appellant-father P.P.)

Michelle Eldien, Otter Tail County Attorney, Kathleen J. Schur, Assistant County Attorney, Fergus Falls, Minnesota (for respondent Otter Tail County Department of Human Services)

P.P. (confidential address) (pro se respondent-mother)

Deanne Raitz, Fergus Falls, Minnesota (guardian ad litem)

Considered and decided by Bratvold, Presiding Judge; Segal, Chief Judge; and Frisch, Judge.

**NONPRECEDENTIAL OPINION**

**FRISCH**, Judge

Appellant-father challenges the termination of his parental rights. Because the district court did not abuse its discretion in weighing father's interest in maintaining the parent-child relationship against the children's best interests, we affirm.

## FACTS

Appellant-father P.P. and mother have six joint children. Father and mother resided together until fall 2021. Around that time, mother obtained an order for protection (OFP) against father. Father violated the OFP and was imprisoned. Father had supervised visitation with his children over Zoom, which was coordinated through a parenting-time center. In spring 2022, the parenting-time center ended its involvement in coordinating father's visitation when he violated the center's rules.

In April 2022, following the end of the involvement of the parenting-time center, father forcibly entered mother's parents' home, where mother was living with the children. Father was not permitted to be at the home due to the OFP. Father hit mother in the head with a gun and shot mother twice. The children were in the home during the incident. Mother was hospitalized and ultimately survived her injuries. In May, father pleaded guilty to attempted second-degree murder.

In July 2023, respondent Otter Tail County Human Services petitioned to terminate father's parental rights. The district court appointed a guardian ad litem (GAL) and ruled that the county was not required to make reasonable efforts to prevent placement or to place the children with father pursuant to Minn. Stat. § 260.012(a)(1) (2022). *See* Minn. Stat. § 260C.301, subd. 8(2) (2022) (providing that a district court may make a finding that "reasonable efforts for reunification are not required as provided under section 260.012"). In October 2023, the parties including father appeared for an evidentiary hearing.

The district court determined that clear and convincing evidence established that father is palpably unfit to parent and that the children experienced egregious harm under

Minn. Stat. § 260C.301, subd. 1(b)(4), (6) (2022). The district court determined that termination was in the children's best interests and that their interest outweighed any interest of father in maintaining the parent-child relationship. The district court terminated father's parental rights and ordered that mother have sole legal custody and sole physical custody of the children.

Father appeals.

**DECISION**

A district court may involuntarily terminate parental rights if: (1) the county made reasonable efforts toward reunification or reasonable efforts are not required; (2) there is clear and convincing evidence that a statutory condition exists to support termination under Minn. Stat. § 260C.301, subd. 1(b); and (3) the proposed termination is in the child's best interests. Minn. Stat. §§ 260C.301, subds. 1(b), 7-8, .317, subd. 1 (2022); *see also In re Welfare of Child. of S.E.P.*, 744 N.W.2d 381, 385 (Minn. 2008). Father challenges only the district court's determination that termination was in the children's best interests. Specifically, father argues that the district court's determination regarding father's interest in maintaining the parent-child relationship is erroneous because it "fails to give adequate weight to father's interest in maintaining the parent-child relationship." Father points to his love for his children, his efforts to better himself while in prison, his ability to address the children's mental-health needs, his determination to rectify his actions, and a lack of negative reactions by the children to Zoom contact with him prior to the April 2022 incident. We note that father does not challenge the district court's determinations that

3

clear and convincing evidence established that he is palpably unfit to parent and that the children experienced egregious harm resulting from father's actions.

A best-interests analysis requires consideration of three factors: "(1) the child's interest in preserving the parent-child relationship; (2) the parent's interest in preserving the parent-child relationship; and (3) any competing interest of the child." *In re Welfare of Child of A.M.C.*, 920 N.W.2d 648, 657 (Minn. App. 2018) (quotation omitted); *see also* Minn. R. Juv. Prot. P. 58.04(c)(2)(ii) (requiring the district court to address these factors in a termination proceeding). "The paramount consideration in termination of parental rights proceedings is the best interests of the child." *In re Welfare of Child of B.J.-M.*, 744 N.W.2d 669, 672 (Minn. 2008) (quotation omitted). If the interests of a child and a parent conflict, the child's interests prevail. Minn. Stat. § 260C.301, subd. 7. "The 'best interests of the child' means all relevant factors to be considered and evaluated." Minn. Stat. § 260C.511(a) (2022). We "apply an abuse-of-discretion standard of review to a district court's conclusion that termination of parental rights is in a child's best interests." *A.M.C.*, 920 N.W.2d at 657.

The district court did not abuse its discretion in ruling that the children's interest in safety conflicted with and outweighed father's interest in maintaining the parent-child relationship. The district court acknowledged father's interest in maintaining the parent-child relationship in its conclusions of law, writing, "[Father] states that he wants to maintain his relationships with his children and that he wants to see them."

The district court continued, "The children have a competing interest for safety that favors termination of parental rights, and that outweighs whatever interest [father] has in

maintaining his parent-child relationships." In concluding that the children's interest in safety outweighed father's interest in preserving the relationship, the district court pointed to father's conduct during the April 2022 incident that arose "due to concern for his children" and father's history of violating domestic-abuse no-contact orders (DANCOs).[1] The district court expressed concern that prior court orders had not been effective at mitigating safety concerns and that father may use the children to control mother. The district court also noted that the children were doing well because of the stability of their environment and that the mental health of the two oldest children had improved with individual therapy. The district court acknowledged father's testimony about his want for parenting time through the county so that mother would not be involved, his studies in prison, and his doctorate degree in religion. The district court weighed this interest against the children's interest, and properly prioritized the children's interests. Minn. Stat. § 260C.301, subd. 7.

The record supports the district court's findings that the children's interest in safety competed with father's interest in maintaining the parent-child relationship. The GAL

---

[1] Before the evidentiary hearing, the county moved the district court to take judicial notice of the "Findings of Fact and Court Orders relating to the parents or children contained" in five criminal and one family-law case files. At the evidentiary hearing, the district court granted the county's motion and took judicial notice of the filings. *See* Minn. R. Juv. Prot. P. 3.02, subd. 3 (permitting a district court to take judicial notice of "findings of fact and court orders in the juvenile protection court file and in any other proceeding in any other court file involving the child or the child's parent or legal custodian"). The records from these files are not included in the record on appeal. But we note that father did not object to the district court taking judicial notice of these filings and does not challenge any factual findings related to those filings on appeal. We therefore consider the district court's findings regarding those files for purposes of our decision.

opined that it was not in the children's best interests to maintain their parent-child relationship with father "due to the trauma they have experienced as a result of the [April 2022 incident] and previously witnessed domestic violence in their home when [father] resided with the family." The district court credited the GAL's testimony and discredited father's testimony.

Father pleaded guilty to attempted second-degree murder of mother. He admitted that his presence at the home during the April 2022 incident was in violation of an OFP, he was previously imprisoned for violating that OFP, and he was convicted of violating two DANCOs.[2] While the social worker who testified at the evidentiary hearing could not say that the children had a negative reaction to their virtual parenting time with father prior to the April 2022 incident, father's assertion that this testimony supports the determination that his interest should be prioritized following the April 2022 incident ignores the impact of the April 2022 incident on his relationship with the children. The children were in the home during the April 2022 incident. Diagnostic assessments by the therapist for the two oldest children note that the children avoided discussing past trauma but displayed symptoms best explained by a trauma diagnosis. One child became upset when the therapist noted father as "dad" on a piece of paper and asked the therapist to "scribble out the word dad and then had [the therapist] cut that part of the paper off." Given this record and the district court's credibility determinations, we conclude that the district court did

_____

[2] The record on appeal does not contain filings from the DANCOs or the OFP, but father does not contend that the district court's findings regarding those filings are erroneous.

not abuse its discretion in determining that the children's interest in safety outweighed father's interests in maintaining the parent-child relationship.

**Affirmed.**