*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A24-1914**

In the Matter of the Civil Commitment of: Dena Joy Alexander.

**Filed May 19, 2025**
**Affirmed in part and remanded**
**Harris, Judge**

Redwood County District Court
File No. 64-PR-24-697

Chris Reisdorfer, Nelson, Oyen, Torvik, P.L.L.P., Montevideo, Minnesota (for appellant Dena Joy Alexander)

Shannon M. Ness, Redwood County Attorney, Redwood Falls, Minnesota; and

Travis J. Smith, Special Assistant County Attorney, Slayton, Minnesota (for respondent Southwest Health & Human Services)

Considered and decided by Ede, Presiding Judge; Harris, Judge; and Smith, John, Judge.[*]

**NONPRECEDENTIAL OPINION**

**HARRIS**, Judge

Appellant challenges her civil commitment as a person who poses a risk of harm due to mental illness, arguing that (1) the district court denied her procedural due process of law by not complying with the requirements of the Minnesota Commitment and Treatment Act (MCTA); and (2) the district court erred by concluding that the statutory

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

criteria for commitment was met. Because appellant did not meet her burden to establish that her due-process rights were violated, we affirm in part. But because the district court did not identify the specific conduct that was the basis of appellant's commitment, we remand for further findings.

**FACTS**

In September 2024, respondent Southwest Health and Human Services (the county) petitioned to civilly commit appellant Dena Joy Alexander. The petition alleged that Alexander posed a risk of harm due to mental illness based on a competency evaluation under Minnesota Rule of Criminal Procedure 20 in a separate criminal proceeding. The rule 20 report , completed by court-appointed examiner Dr. Charles Chmielewski, concluded that Alexander was not competent to proceed in the criminal matter and that Alexander met the criteria for civil commitment.

Alexander's attorney requested that the district court appoint Dr. Linda Marshall to complete an independent second examination. The district court granted the request and appointed Dr. Marshall as the second examiner. Five days later, Alexander's attorney filed a letter with the court about the status of his representation. The letter stated that Alexander had "become extremely upset about the selection of [Dr. Marshall] for a second examination." It further explained that Alexander felt "she was not adequately advised," did not receive answers to her questions, and was not treated "in a proper professional manner." The letter concluded by stating that Alexander "stated that she would not have [the attorney] represent her in this matter," and the letter was an "advisory in the event [the district court] wish[ed] to appoint alternative counsel." The district court construed the

2

letter as a request for a new attorney and an alternate examiner. The district court did not appoint a new attorney. However, "as a courtesy," the district court appointed Dr. Edwin Yerka as the second examiner instead of Dr. Marshall. Dr. Yerka attempted to meet with Alexander two days before the October 11, 2024 commitment hearing, but Alexander was uncooperative and verbally hostile.

The day before the commitment hearing, Alexander's attorney filed a request to reappoint Dr. Marshall and to reschedule the hearing. Alexander's attorney also submitted an affidavit, which explained that, "[i]n messages from and conversations with [Alexander,] it became clear that [Alexander] was not objecting to Dr. Marshall as her second examiner but was objecting to the forced decision-making process." The district court denied the request to reappoint Dr. Marshall, finding that Dr. Yerka would remain as the second examiner, and that there was not a sufficient basis to appoint a third examiner. The same day, Dr. Yerka filed his report with the court. The parties agree that the report was untimely because it was not filed 48 hours prior to the hearing as required under the MCTA. Because Dr. Yerka was unable to fully examine Alexander, his report was primarily a summary of Dr. Chmielewski's rule 20 report, the prepetition screening program report, and medical records.

The commitment hearing was held remotely via video conferencing. Alexander appeared from jail custody, separate from her attorney. Alexander's attorney objected to Dr. Yerka's report as untimely. The district court offered to continue the hearing, which Alexander's attorney declined. Alexander's attorney also objected because Alexander did not have the opportunity to select her own examiner and did not agree with the petition.

3

Alexander agreed with the need for services. However, she maintained that her request for a second examiner of her choosing was not granted, and that she did not choose Dr. Yerka as her second examiner. Prior to hearing any testimony, the district court removed Alexander from the virtual courtroom because she was interruptive, was exiting the room, and made a profane gesture.

The county's only witness was Dr. Yerka, whose testimony was consistent with his report. He testified that Alexander presents with symptoms of bipolar disorder, including pressured speech and tangential thoughts. Dr. Yerka testified that Alexander is not an imminent risk of danger to self or others because she is in a secured facility, but that he would have "significant concerns if she were not in a secured environment," because of her "impulsiveness" and his "review of the charges against her." Dr. Yerka also explained that medication is the typical treatment option and that "without medications [Alexander] would not improve." He further opined that Alexander lacks insight into her mental illness, has not been compliant with addressing her mental health or taking medication, and "is not cooperative with wanting to get treatment." Even though Alexander was removed from the hearing, Alexander's attorney was present to represent her interests and cross-examined Dr. Yerka.

After the county rested, Alexander's attorney stated that "his only witness would have been . . . Alexander." The district court worked with jail staff to attempt to have Alexander rejoin the hearing, but warned that if "she begins with the same . . . behavior that [it] observed and that . . . is repeated in all of the reports . . . [it would] exit her from the hearing again." Jail staff informed the district court that Alexander "said she [would]

4

come back down, but she [needed] to speak with her attorney prior to talking to [the court]." The district court asked Alexander's attorney if he "had an opportunity to talk to [his] client prior to [the hearing]." Alexander's attorney responded that "we spoke a little bit [that] morning," he "received a number of messages from her," and that he "had to have a fairly lengthy conversation with her the other day." Based on this inquiry, the district court denied Alexander's request to speak with her attorney, stating, "I'm not willing to engage in this type of negotiation . . . . If she wants to come participate in the hearing, which we're in the middle of right now, she can do that." Then, jail staff informed the district court that Alexander was not willing to come back to the hearing "if she[] [was] not allowed the attorney stuff," and removed Alexander from the video conference at the district court's direction.

After closing arguments, the district court concluded that Alexander met the criteria for civil commitment as a person who poses a risk of harm due to metal illness, and that "all of these proceedings have been conducted in compliance with the [MCTA]." The district court explained that it denied Alexander's request to reappoint Dr. Marshall as the second examiner because it "already honored her wishes to not have Dr. Marshall," and it believed that the requests were a result of her mental illness. The district court found that Alexander was properly represented by counsel and had "more than a substantial amount of time [to speak] with her attorney." Also, the district court acknowledged that Dr. Yerka's report was untimely, but determined that the appropriate remedy would be a continuance, which Alexander's attorney declined. The district court filed a written order that refelcted the foregoing rulings the same day. Alexander appeals.

5

**DECISION**

When reviewing a civil-commitment order, we are limited to examining whether the district court complied with the MCTA, Minnesota Statutes section 253B.01-.24 (2024), and whether its findings support its conclusions of law. *In re Civ. Commitment of Janckila*, 657 N.W.2d 899, 902 (Minn. App. 2003); *In re Knops*, 536 N.W.2d 616, 620 (Minn. 1995). Alexander argues that (1) the district court denied her procedural due process of law by not complying with the requirements of the MCTA; and (2) the district court erred in concluding that the statutory criteria for commitment was met. We address each argument in turn.

## I. Alexander did not demonstrate prejudice as a result of the district court's alleged failure to comply with the MCTA.

First, Alexander argues that her due-process rights were violated throughout the commitment proceedings because the district court did not comply with the MCTA.[1] Under the United States and Minnesota Constitutions, the government may not deprive an individual of life, liberty, or property without due process of law. U.S. Const. amend. XIV, § 1; Minn. Const. art. I, § 7. "The Due Process Clause confers rights on persons who are civilly committed because civil commitment 'constitutes a significant deprivation of liberty.'" *In re Civ. Commitment of Opiacha*, 943 N.W.2d 220, 226 (Minn. App. 2020) (quoting *Addington v. Texas*, 441 U.S. 418 (1979)). "At its core, due process requires that the procedures used by the government before depriving an individual of his or her

---

[1]Alexander does not frame her arguments under the three-factor balancing test typically used to analyze procedural due-process claims, as outlined in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

protected life, liberty, or property interest must provide that individual with notice and an opportunity to be heard at a meaningful time and in a meaningful way." *Olson v. One 1999 Lexus*, 924 N.W.2d 594, 601 (Minn. 2019) (quotation omitted). But "[t]he State—as long as it has provided adequate notice—can condition the right to be meaningfully heard at a meaningful time on a party's compliance with reasonable procedural steps." *See In re Welfare of Children of G.A.H.*, 998 N.W.2d 222, 235 (Minn. App. 2023).

As a threshold matter, the county argues that Alexander waived her procedural due-process claim because she did not raise it with the district court. To the extent that Alexander's arguments are a traditional due-process claim, this claim was not raised or considered by the district court, and we decline to consider it. *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988) (stating that appellate courts generally address only those questions previously presented to and considered by the district court); *see In re Civ. Commitment of Hand*, 878 N.W.2d 503, 508 (Minn. App. 2016) (citing this aspect of *Thiele* in a civil-commitment appeal), *rev. denied* (Minn. June 21, 2016).

However, Alexander generally argues that the district court erred by failing to comply with the procedures in the MCTA. This argument was raised and considered below. The district court found that "[the commitment] hearing and all of these proceedings have been conducted in compliance with the [MCTA]." And on appeal, Alexander raises three distinct claims of error, each of which was raised with and decided by the district court. Alexander argues that: (1) the district court violated her right to select the second examiner of her choosing; (2) the district court did not allow her sufficient time to consult with her attorney during the commitment hearing; and (3) the second examiner's

7

report was untimely because it was not filed 48 hours before the commitment hearing. *See* Minn. Stat. § 253B.07, subds. 2c, 3, 5.

Even if we agree with Alexander that the district court erred by not complying with some requirements of the MCTA, "the mere existence of that error is, by itself, insufficient to require a grant of relief" because Alexander must demonstrate prejudice. *In re Civ. Commitment of Turner*, 950 N.W.2d 303, 309 (Minn. App. 2020). Although the amount of process due in a particular case can vary based on the circumstances, "prejudice as a result of the alleged violation[s] is an essential component of the due process analysis." *In re Welfare of Child of B.J.-M.*, 744 N.W.2d 669, 673 (Minn. 2008). Alexander's prejudice argument is minimal. Overall, Alexander argues that these "irregularities raise serious concerns on the fairness of [the] proceedings." She also argues that she was prejudiced because "she did not get to choose the second examiner of her choice, did not get to consult with counsel during the hearing at her request, and did not receive the examiner's report sufficiently in advance to assist in preparing her defense."

Regarding the second examiner, however, Alexander does not argue why Dr. Yerka's report was insufficient, or that Dr. Marshall would have had a different recommendation than Dr. Yerka. Next, had the district court granted Alexander's request to speak to her attorney mid-trial, Alexander does not identify what she would have testified about or how her testimony would have affected the outcome of the hearing. *See G.A.H.*, 998 N.W.2d at 240-42. (Deciding that even if mother and her witnesses had testified as outlined in her affidavit in support of her motion for a new trial, she had not carried her burden to show that testimony would have materially affected the district court's

8

decision to terminate her parental rights.) We note that the district court paused the proceedings to give Alexander a meaningful opportunity to return to the hearing and participate. The district court considered Alexander's request to confer with counsel as an unacceptable negotiation tactic, rather than a genuine request to speak to her attorney. Based on Alexander's conduct at the beginning of the hearing, the record does not support a reasonable inference that she would have participated even if the district court granted her request to consult with her lawyer after the court had removed her for being interruptive, exiting the room, and making a profane gesture. *See In re Welfare of Child of F.F.N.M.*, 999 N.W.2d 525, 543 (Minn. App. 2023) (concluding that district court did not violate mother's procedural due-process rights by excluding her from trial and noting "that the district court was willing to allow mother to exercise [her] rights, but mother refused to behave in a manner that would have allowed her to do so").

Lastly, Alexander concedes that the untimely report was prejudicial only when considered collectively with the other procedural irregularities. We discern no prejudice resulting from the untimely report because Alexander's attorney declined the district court's offer to continue the hearing. Because Alexander did not demonstrate prejudice arising from any of the alleged errors, either individually or in the aggregate, we conclude that the district court did not violate Alexander's right to due process.. *See Turner*, 950 N.W.2d at 309 (concluding that appellant did not show prejudice because the alleged error "would have changed nothing").

**II.    The district court's findings are insufficient to permit meaningful appellate review.**

Under the MCTA, civil commitment is appropriate "[i]f the court finds by clear and convincing evidence that the proposed patient is a person who poses a risk of harm due to mental illness" and there is "no suitable alternative to judicial commitment."  Minn. Stat. § 253B.09, subd. 1(a).  A proposed patient poses a risk of harm due to mental illness if they have "an organic disorder of the brain or a substantial psychiatric disorder of thought, mood, perception, orientation, or memory" and, because of this impairment, they "pose[] a substantial likelihood of physical harm to self or others."  Minn. Stat. § 253B.02, subd. 17a(a).  The district court may find that the proposed patient poses a substantial likelihood of physical harm based on evidence of:

> (1) a failure to obtain necessary food, clothing, shelter, or medical care as a result of the impairment;
> (2) an inability for reasons other than indigence to obtain necessary food, clothing, shelter, or medical care as a result of the impairment and it is more probable than not that the person will suffer substantial harm, significant psychiatric deterioration or debilitation, or serious illness, unless appropriate treatment and services are provided;
> (3) a recent attempt or threat to physically harm self or others; or
> (4) recent and volitional conduct involving significant damage to substantial property.

*Id.*, subd. 17a(a)(1)-(4).

Here, the district court concluded that Alexander was a person who posed a risk of harm because of mental illness and met the statutory criteria for civil commitment for three of the four statutory reasons.  *Id.*, subd. 17a(a)(1)-(3).  Alexander argues that the record contains no evidence to support the district court's conclusions because the county did not

10

satisfy its burden of proving by clear and convincing evidence that Alexander meets the statutory criteria for commitment.

Whether the record contains clear and convincing evidence to support the district court's conclusion that an individual meets the statutory criteria for commitment is a question of law that we review de novo. *In re Linehan*, 518 N.W.2d 609, 613 (Minn. 1994); *In re Civ. Commitment of Crosby*, 824 N.W.2d 351, 356 (Minn. App. 2013), *rev. denied* (Minn. Mar. 27, 2013). However, the district court must justify its conclusion that an individual meets the statutory criteria for commitment "by findings based upon evidence at the hearing." *Knops*, 536 N.W.2d at 620. When commitment is ordered, the district court "shall find the facts specifically, and separately state its conclusions of law." Minn. Stat. § 253B.09, subd. 2(a). "[T]he findings of fact and conclusions of law shall specifically state the proposed patient's conduct which is a basis for determining that each of the requisites for commitment is met." *Id.*

On appeal from a civil-commitment order, we review a district court's factual findings for clear error. *In re Civ. Commitment of Kenney*, 963 N.W.2d 214, 223 (Minn. 2021). When reviewing factual findings for clear error, we (1) "view the evidence in the light most favorable to the findings"; (2) do not find our own facts; (3) do not "reweigh the evidence"; and (4) do not "reconcile conflicting evidence." *Id.* at 221-22 (quotations omitted). "[We] need not go into an extended discussion of the evidence to prove or demonstrate the correctness of the findings of the [district] court." *Id.* at 222 (quotation omitted). "Rather, because the factfinder has the primary responsibility of determining the fact issues . . . an appellate court's duty is fully performed after it has fairly considered all

the evidence and has determined that the evidence reasonably supports the decision." *Id*. (quotation omitted).

The district court based its decision on the following evidence: (1) Alexander "has been diagnosed with Bipolar Disorder"; (2) Alexander "exhibits disruptive, manic behavior, pressured speech and tangential thoughts"; (3) Alexander "has a history of mental illness and medication non-compliance"; (4) Alexander "is impulsive and lacks insight"; and (5) "Dr. Yerka and Dr. Chmielewski's reports."

The district court's order "use[s] language from the [statutory requirements] . . . in a conclusory fashion," and the findings are not "meaningfully tied" to the conclusions of law. *In re Civ. Commitment of Spicer*, 853 N.W.2d 803, 809, 811 (Minn. App. 2014). The district court's order outlines the criteria for commitment and the evidence the order relied on, but the order does not "specifically state" how Alexander's mental illness resulted in Alexander posing "a substantial likelihood of physical harm to self or others," as required by the MCTA and caselaw. Minn. Stat. § 253B.09, subd. 2(a); Minn. Stat. § 253B.02, subd. 17a(a) (1)-(3); *see Spicer*, 853 N.W.2d at 811.

For example, the examiners' reports include references to Alexander's criminal history, housing stability, medication compliance, and ability to meet her basic needs and seek help. However, the district court did not connect specific facts from the examiners' reports to its conclusion that Alexander satisfies the requirement for commitment or explain "which facts or opinions were most persuasive [to its] ultimate decision." *In re Welfare of M.M.*, 452 N.W.2d 236, 239 (Minn. 1990). In other words, we are unable to

determine which facts the district court relied on to determine that Alexander poses a substantial likelihood of physical harm to self or others.

By basing its decision in part on the examiners' reports, the district court "implicitly indicate[d]" that it found the reports credible." *Pechovnik v. Pechovnik*, 765 N.W.2d 94, 99 (Minn. App. 2009). However, the district court based its conclusion on the entirety of "Dr. Yerka and Dr. Chmielewski's reports," and therefore did not make sufficiently detailed findings to permit meaningful appellate review. *Spicer*, 853 N.W.2d at 811. The remaining evidence that the district court relied on appears directly in Dr. Yerka's report and testimony, and the "district court cannot satisfy its obligation to find facts with particularity by simply adopting *in toto* the opinions of a particular expert." *Id.* at 810.

In sum, the district court's order does not allow for meaningful appellate review. Even if there is evidence in the record that might support the district court's conclusions, the district court did not make specific findings on Alexander's conduct or indicate which evidence from the examiners' reports it found persuasive. *Id.* at 811; *In re Danielson*, 398 N.W.2d 32, 35-37 (Minn. App. 1986). Because we are unable to determine whether the district court's findings support its conclusions of law, we remand for further consideration of whether commitment is appropriate. *In re Civ. Commitment of Ince*, 847 N.W.2d 13, 26 (Minn. 2014); *Danielson*, 398 N.W.2d at 37 (citing *In re Stewart*, 352 N.W.2d 811, 813 (Minn. App. 1984)). On remand, the district court may, in its discretion, reopen the record to allow for the submission of additional evidence. We express no opinion on the ultimate issues of whether Alexander meets the statutory criteria for commitment, but in light of the

evidence presented, additional findings are needed to allow for meaningful appellate review of the issue.

**Affirmed in part and remanded.**